### 63989. DOWDY v. PALMOUR.
### 63990. McDONALD v. PALMOUR.

BIRDSONG, Judge.

Contempt. Appellants Dowdy and McDonald are attorneys-at-law who practice in the Hall County Superior Court. In August, 1981, both appellants represented a criminal defendant in a revocation of probation hearing. At the beginning of the hearing, as the first witness for the state was being called, appellants invoked the rule of sequestration. The trial court ordered all witnesses in the proceedings to come forward, be sworn and retire from the courtroom until called. The prosecution witnesses appeared as ordered. No defense witnesses appeared nor did counsel for defendant inquire if the order for "all witness to appear" included witnesses for the defense. At the beginning of the defense case, the first witness approached the witness chair and was challenged by the prosecutor as having come from within the courtroom. The trial court, though not sure where the witness had been seated, allowed the witness to testify. Thereafter, additional defense witnesses were called and it became clear that no defense witnesses had been sequestered. The trial court allowed all defense witnesses to offer testimony. However, the court indicated its displeasure to the defense counsel that they had invoked the rule of sequestration but then wilfully disobeyed the order of the court to have all witnesses appear for swearing and sequestration.

During the presentation of evidence by the state, the state offered evidence taken from an automobile. Appellants objected on the grounds of an illegal search and seizure from the auto because there was a failure to obtain a search warrant in spite of ample time to do so. The following colloquy occurred:

"DOWDY: Judge, may I enter one more objection? The second objection is that this car is the fruit of an illegal search, in our opinion, since there was time to get a search warrant.

"COURT: I can take that out in a flash. You're wrong. You want some citations, or has Mr. McDonald got that big fat book that he always carries around.

"DOWDY: We have our citations and we'll stand on them.

"COURT: [Apparently addressed to McDonald] What are yours?

"McDONALD: Give him those citations.

"COURT: What are yours? You read yours, Mr. McDonald. (Pause) Have you got any? (Pause) Mr. McDonald, if you would, I'm addressing you. If you would stand and please respond to me, I would appreciate it. (Pause) Has he lost his voice, Mr. Dowdy?"

At the conclusion of the revocation proceedings, the trial court ruled as follows: "The rule was invoked. I asked that all witnesses come around and be sworn. Both of you, apparently, didn't think that applied to the defendant's witnesses, and the defendant's witnesses were allowed by defense counsel to remain in the courtroom, the court not knowing who the witnesses were. Additionally, to you, Mr. McDonald, at the time, I asked you a question. You sat in your chair. When the court addressed you, you did not stand up. You did not respond when requested by the court to do so, and as a matter of fact, in so doing, Mr. McDonald, I want the record to be perfectly clear, that your expression clearly indicated to the court that you were ignoring this court.

"Now, this court deems that this is a direct contempt of this court and will deal with each of you attorneys right now. The acts complained of are that each of you misbehaved as officers of the court, in your official capacity as an officer of the court, after the court — or you, Mr. Dowdy, asked that the witnesses be sequestered, and then both of you, as attorneys for the defendant, allowed the witnesses to remain in the courtroom, especially after the court said 'let all the witnesses come around and be sworn.'

"This was in disobedience to a lawful order, or a command, if you want to call it that, of the court, which tended to obstruct the administration of justice. It was also the disobedience of a lawful order of the court. . . .

"The court is going to rule that these were contemptuous and insultant [sic] acts in the immediate view and presence of the court, which tended to obstruct the orderly administration and proceedings of the court and to impair the respect due the court and its authority."

The court then held each attorney in wilful contempt but imposed no sanctions other than to admonish both to read the rules of the court, to respond to all requests and questions made by the court as gentlemen and officers of the court. Each attorney filed a separate appeal, but because the issues in each case are the same and arise out of the same factual situation, we have consolidated the two appeals as one. *Held:*

Appellants have filed a consolidated and quite voluminous brief containing some 50 pages. In essence, appellants simply contend that they only did what they had a right to do and at no time exhibited contumacious behavior nor failed to obey the court or respond

diligently and fully to all court orders. In short, appellants do not deny the occurrences but argue that what the trial court regarded as contumacious conduct was authorized in the law and was performed in a professional and courteous manner. Appellants complain that the trial court presently and in the past has harbored personal ill feelings toward each appellant and based the contempt upon these personal feelings rather than upon a valid finding of contumacious conduct. It is equally apparent that the trial court based its contempt action upon the two clearly exemplified occurrences. Our quest is simply to determine if the action of the trial court, viewed in the light tending to support the contempt order, preponderates in favor of that order. *Farmer v. Holton,* 146 Ga. App. 102 (245 SE2d 457).

We first observe that contumacious conduct classically falls into two categories. The first is that which tends to obstruct the orderly administration of justice. The second type usually tends to hold the court itself in contempt by action or word. As an example of the second category, see Spruell v. Jarvis, 654 F2d 1090 (5th Cir. 1981). "In this case attorney Spruell was found in contempt of court solely for the statements in his objection to the trial judge's instruction to the jury on the statutory definition of entrapment. . . . the petitioner's objection apparently was well-taken. . . . [u]nlike those cases where the trial judge must use the summary contempt power to maintain order in the courtroom . . . here Spruell's conduct cannot be said to have amounted to an obstruction of the orderly administration of the judicial process." Spruell v. Jarvis, at p. 1094.

In the case of Farmer v. Strickland, 652 F2d 427 (5th Cir. 1981), the conduct of attorney Farmer was found to be obstructive. In that case the circuit court expressly recognized the trial court's power summarily to find contempt and sentence therefor. "Although Taylor [v. Hayes, 418 U. S. 488 (94 SC 2697, 41 LE2d 897)] did significantly limit a trial judge's authority to punish contemptuous conduct summarily when the final adjudication of contempt and sentencing are postponed until after trial, it is clear that the use of summary contempt procedures is appropriate in certain circumstances." Farmer, supra, p. 436.

The Taylor case, supra, established guidelines useful for our consideration in the instant case. "[B]efore an attorney is finally adjudicated in contempt and sentenced after trial for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf. This is not to say, however, that a full-scale trial is appropriate. Usually the events have occurred before the judge's own eyes, and a reporter's transcript is available. But the contemnor might at least urge, for example, that the behavior

at issue was not contempt but the acceptable conduct of an attorney representing his client; or, he might present matters in mitigation or otherwise attempt to make amends with the court." Taylor v. Hayes, supra, p. 498-499. In this case both Dowdy and McDonald were specifically informed of the acts considered contumacious and given an opportunity to rebut or mitigate the same. It is also clear that in the eyes of the court the conduct of counsel was of that nature to obstruct the administration of justice in his court. We conclude therefore that the conduct of counsel was of that character to warrant the use of summary contempt procedure recognized in the Taylor case, supra.

One other observation is necessary. Objection was made that the trial court was too personally involved to conduct the hearing and assess sentence itself. This contention is not well taken. "It is, of course, not every attack on a judge that disqualifies him from sitting . . . a lawyer's challenge, though 'disruptive, recalcitrant and disagreeable commentary,' was still not 'an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification.' " Mayberry v. Pennsylvania, 400 U. S. 455 at 465-466 (91 SC 499, 27 LE2d 532). Our examination of the dialogue between court and counsel reflects a lack of that degree of scurrilousness raising a suspicion of bias or presence of strong feeling on the part of the trial court.

Code Ann. § 24-104 grants every court the power to punish for contempt committed in its presence. *Plunkett v. Hamilton,* 136 Ga. 72 (1) (70 SE 781). Moreover, every court has the inherent power to preserve and enforce order and compel obedience to its order, to control the conduct of its officers, and to inflict summary punishment for contempt upon any person failing and refusing to obey any lawful order of the court. *Bradley v. State,* 111 Ga. 168, 170 (36 SE 630). There is no doubt that the summary contempt power is still available to courts, under appropriate circumstances, to control judicial proceedings. "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." Illinois v. Allen, 397 U. S. 337, 343 (90 SC 1057, 1061, 25 LE2d 353). This court will not seek to control the wide discretion vested in the trial court in the exercise of this fundamental power unless it is made to appear that wrong or oppression has resulted from an abuse of such discretion reposed in the court. *Jackson v. State,* 225 Ga. 553, 557 (4) (170 SE2d 281); *Young v. Champion,* 142 Ga. App. 687, 691 (236 SE2d 783). If there is any substantial evidence authorizing a finding that the parties charged were guilty of contempt, and that is the trial judge's conclusion, his judgment must be affirmed insofar as the sufficiency of the evidence

is concerned. *Nylen v. Tidwell,* 141 Ga. App. 256 (233 SE2d 245). We do not consider the remarks of the judge of such character as to engender contempt by counsel. We are not able to conclude under the rules of law applicable nor from the facts of the record, that the trial judge's adjudications of contempt were gross, erroneous or flagrant abuses of discretion. Having conducted themselves as the record shows, counsel perforce must abide the consequences.

*Judgment affirmed. Quillian, C. J., Deen, P. J., McMurray, P. J., Shulman, P. J., and Sognier, J., concur. Banke, Carley and Pope, JJ., dissent.*

DECIDED NOVEMBER 30, 1982 —
REHEARING DENIED DECEMBER 16, 1982.

*Andrew A. Dowdy, Victoria Little,* for appellant (case no. 63989).

*Douglas W. McDonald, Victoria Little,* for appellant (case no. 63990).

*Jeff C. Wayne, District Attorney,* for appellee.

BANKE, Judge, concurring in part and dissenting in part.

1. I must respectfully take issue with the majority's conclusion that the transcript does not reflect the presence of strong feeling on the part of the trial court. At the conclusion of the trial court's remarks cited in the majority opinion, after the appellants had been adjudicated in contempt, the following exchange took place between the judge and Mr. McDonald:

COURT: "Now, directing your attention to the prior confrontation that you wanted mentioned, Mr. McDonald, you and I had a confrontation in a murder case in Lumpkin County, and we had one in Dawsonville. In Dawsonville, if my memory serves me correct, I asked you for a citation and you failed to give it to me. The record will reveal whatever that confrontation was. That ends the matter. You gentlemen are now warned. If you would like a copy of the transcript, I would be glad to supply it to you. I'm going to have it transcribed and I will keep it in the file, and henceforth, I expect you to abide by the requests, the orders and rulings of the court."

McDONALD: "May it please the court —"
COURT: "That's the end of it, Mr. McDonald."
McDONALD: "May I be heard for just a moment?"
COURT: "Certainly."
McDONALD: "Please the court, I would like an opportunity to study this matter. I would like an opportunity, at the proper time — maybe this is not the proper time — to respond to the court. It is

apparent from the expression on your face and the tone of your voice that maybe now is not the right time, due to your —"

COURT: "Mr. McDonald, the expression on my face is my normal expression, and the tone of my voice is my normal tone, when matters of this matter happen. I would caution you to be very careful as to what you say to the court. I have made a ruling. I will abide by this ruling. You can do whatever you desire to do, that are your legal avenues. But Mr. McDonald, I guess that I might sum it all up as saying that I don't understand the rules by which you and Mr. Dowdy operate, and I'm just making it perfectly clear that the way you are acting, and have acted in this courtroom today is not satisfactory with me, and it showed to me — talk about expressions on their face, the expression on your face when I asked you to stand, and the record is clear when I asked you to stand, bordered on being obnoxious."

McDONALD: "Well, maybe that is my usual expression too, Your Honor, and you —"

COURT: "No, sir. I've seen enough of you to know that is not your usual expression, but I think you have seen enough of me to know that this is my usual expression."

McDONALD: "I would just like to conclude by saying this. I don't want to be contemptuous of the court. I don't want —"

COURT: "I've held you in contempt. I've held both of you in contempt, willful contempt."

McDONALD: "I want to refute that by simply making the statement that I have not intended to be contemptuous to this court. If the court construes it that way, then I cannot take issue with that, except to say that it has not been intentional on my part. It's not been willful on my part. I'm not arguing with Your Honor. It's just in times like these, when the court anticipated what you were going to do, and I have had no opportunity to anticipate what you were going to do, and to prepare myself for it, I stand here not having had the opportunity to prepare to respond, and I would like that opportunity to do so at an appropriate time."

COURT: "Mr. McDonald, again, you take any legal avenue that you want to. As I understand it, misbehavior in the presence of the court can be dealt with immediately, and that is the way I did it. As I have said before, I will repeat myself, I have imposed no sanctions for this wilful contempt, but I do admonish you to act as a gentleman in the court.

"Mr. McDonald, whether you like me or not — we haven't addressed this subject, and it makes no difference — but whether you like me or not, whether you like any judge that you appear before or not, you are an officer of the court. You should be a gentleman. You should conduct yourself as a gentleman, and whether you like the

man that is the judge, you should respect the court, if for no other reason than pure professionalism.

"I had not said anything in this trial, prior to all of this, to deserve the treatment that I received from you."

McDONALD: "Well, I take issue with that."

COURT: "If you take issue with it, then you should have done it at the time. But, Mr. McDonald, except for about three or four particular other individuals, this is probably the rudest that anybody has ever been to me in the courtroom, sitting there when I asked you a question, ignoring me, not responding. I didn't know whether you had lost your voice or not. You didn't say a word. You just looked at me — quite honestly, you looked at me like I was an idiot."

McDONALD: "No, Judge. I looked at you in utter amazement, because I didn't understand why you attacked me as you did, and I was dumbfounded. I was at a loss for words."

COURT: "That's an untruth, Mr. McDonald. You sat there with a look of contempt on your face like I was an idiot. I watched you. You can try to explain it away in the record all you want to. The order stands. The matter is ended. Don't say any more about it. Just have a seat. Go about your regular duties, or appeal the case. I'll have it typed. I'm not going to discuss it any more."

I cannot read these comments without concluding that the trial judge was upset, angry, and personally affronted by the statements and conduct of the appellants, past and present. While these emotions may well have been justified under the circumstances, in order to remove any appearance of prejudice or bias the judge should have disqualified himself, and another judge should have been substituted to make a final disposition of the contempt charges. In Taylor v. Hayes, 418 U. S. 498, 503 (94 SC 2697, 41 LE2d 897) (1974), the United States Supreme Court held that in determining whether such disqualification is necessary, "the inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.' Ungar v. Sarafite, 376 U. S. 575, 588 (1964). 'Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties,' but due process of law requires no less." Id. at 501. See also Mayberry v. Pennsylvania, 400 U. S. 455 (91 SC 499, 27 LE2d 532) (1971); Spruell v. Jarvis, 654 F2d 1090 (5th Cir. 1981), (wherein federal habeas corpus relief was granted to an attorney whose contempt conviction had previously been upheld by this court).

2. I must further take issue with the majority's conclusion that "both Dowdy and McDonald were specifically informed of the acts considered contumacious and given an opportunity to rebut or mitigate the same." It is quite clear from the transcript that the court did not specifically inform the appellants of the acts considered contumacious until immediately prior to holding them in contempt, and it is also clear that the appellants were given no opportunity to respond until *after* the final adjudication had already been made. In Taylor v. Hayes, supra, at 498-499, the Supreme Court held that before an attorney may be held in contempt and sentenced after trial for conduct occurring during trial, he is entitled to "reasonable notice of the specific charges and opportunity to be heard in his own behalf." The contempt proceedings in this case fell far short of meeting these requirements. Accord Spruell v. Jarvis, supra.

3. While I would remand McDonald's case for a new hearing based on the foregoing due-process violations, I would reverse Dowdy's conviction for lack of evidence since it was based solely on the failure of the defense witnesses to leave the courtroom after he and McDonald had invoked "the Rule." When a party invokes the Rule, it applies only to witnesses of the other party. Code § 38-1703. See *Hall v. Hall,* 220 Ga. 677 (1) (141 SE2d 400) (1965); *Blitch-Everett Co. v. Jackson,* 29 Ga. App. 440 (2) (116 SE 47) (1923). There is no indication in the transcript that the state's attorney ever invoked the Rule, nor is there any indication that the trial judge attempted to invoke the Rule on the state's behalf. Although the majority apparently construes the court's order for all witnesses to appear and be sworn as constituting a sufficient application of the Rule to defense witnesses, the judge himself clearly placed no such construction on his order but acted under the belief that defense counsel's invocation of the Rule had already accomplished this. In any event, there is no basis upon which to presume that a trial judge has the authority to invoke the Rule on the state's behalf. On the record before us, the failure of the defense witnesses to leave the courtroom during the trial of this case cannot reasonably be considered an act of contempt on the part of either appellant.

4. Although the issue is not specifically addressed in the majority opinion, I concur in the decision to reach the merits of this appeal, even though the trial court imposed no sanctions on the appellants. In the case of *In re Crudup,* 149 Ga. App. 214 (253 SE2d 802) (1979), which the state cites as authority requiring dismissal of the appeal, this court found a contempt order to be interlocutory, and thus not appealable as a matter of right, where no sanctions had been imposed. However, that holding was based solely on *Harrell v. Peteet,* 134 Ga. App. 210 (214 SE2d 5) (1975), a case in which the trial court

had indicated in its order that further action was contemplated in the trial court. Since it is clear from the contempt order before us now that no further action is contemplated in the trial court, the order must be considered final and thus appealable as a matter of right pursuant to Code Ann. § 6-701 (a) (1).

I am authorized to state that Judge Carley and Judge Pope join in this dissent.