## 39560. DOWDY et al. v. PALMOUR.

HILL, Chief Justice.

Andrew Dowdy and Douglas W. McDonald, attorneys, were held in contempt of court. Dowdy and McDonald represented a client in a probation revocation hearing before Judge James E. Palmour, III. The probationer was charged with having violated the conditions of his probation by possessing cocaine. When the state called its first witness, Dowdy asked for the rule of sequestration. The judge said: "All right. Call all witnesses around." The assistant district attorney

called two additional witnesses who were sworn and sent outside the courtroom.

When the state offered two photographs of a vehicle reported to police as having been stolen and in which cocaine was found, the following transpired:

"COURT: Any objections?

"DOWDY: Same objections as in our motion to suppress. All of this information is hearsay, unless they have an owner here to testify and identify the car.

"COURT: With the state of the record, your motion is overruled. I don't think you understand — I think you have lost sight of the concept of revocation as opposed to conviction of a person of a criminal offense. I'm not going to try the car stealing case. Let's get on with the issue at hand.

"DOWDY: Judge, may I enter one more objection? The second objection is that this car is the fruit of an illegal search, in our opinion, since there was time to get a search warrant.

"COURT: I can take that out in a flash. You're wrong. You want some citations, or has Mr. McDonald got that big fat book that he always carries around.

"DOWDY: We have our citations and we'll stand on them.

"COURT: What are yours?

"McDONALD: Give him those citations.

"COURT: What are yours? You read yours, Mr. McDonald. (Pause) Have you got any? (Pause) Mr. McDonald, if you would, I'm addressing you. If you would stand and please respond to me, I would appreciate it. (Pause) Has he lost his voice, Mr. Dowdy?

"DOWDY: No, sir, Your Honor.

"COURT: Mr. McDonald, would you respond?

"McDONALD: I asked Mr. Dowdy to give the court a copy of the brief, Your Honor.

"COURT: I asked you to respond, Mr. McDonald.

"McDONALD: Our citations of authority are set forth in the brief, Your Honor.

"COURT: Thank you.

"McDONALD: We would very much appreciate Your Honor's citations of authority, and if we are wrong, we will certainly admit that we are wrong to the court and to the district attorney, but we would appreciate the benefit of Your Honor's citations too, because we don't like to ever cite any improper authority to the court, and if so, we will certainly correct our brief.

"COURT: Does that need a response, Mr. McDonald, from me, that you don't like to cite authority that is no good?

"McDONALD: I've said all I wish to say, Your Honor.

"COURT: I've said all I wish to say, Mr. McDonald. I'll accept your authority and I'll overrule your motion. There are two cases that just came out recently, that you might want to read, but I'm not going to tell you what they are.

"For the record, the reason I'm not going to tell you what they are, I rarely get any from you. I think turnabout is fair play. If I have to hunt them, I guess you had better hunt them."

When the defense called its first witness and began direct examination, the following occurred:

"ADA: Has this witness been in the courtroom?

"DOWDY: I got him out of the grand jury room.

"ADA: I think he was sitting over here in the courtroom.

"COURT: I don't know.

"THIRD PERSON: He was sitting on this first row right here.

"COURT: Go ahead."

The questioning then resumed.

When the probationer's first witness was excused, the following transpired:

"COURT: Call your next witness.

"DOWDY: Call Bryant Johnson.

"COURT: Now, Mr. Johnson is coming out of the audience. Mr. Dowdy, let's talk about this. You insisted on the rule, and he's been sitting in here, and, apparently, this other gentleman has been sitting in here.

"DOWDY: Yes, sir. I insisted on the rule as to the state's witnesses. The state made no statement as to any witnesses for the defendant.

"COURT: Mr. Dowdy, I'll go ahead and let them testify, but I'm not playing games. I'm going to deal with you and Mr. McDonald when we get through this case, both of you.

"DOWDY: I'm not intending to play games with the court, Your Honor.

"COURT: I consider it very serious, Mr. Dowdy. Bring him on up. I'll deal with it. It looks like you gentlemen have forgot our last little confrontation.

"McDONALD: What confrontation is that, Your Honor? Or shall we deal with this later?

"COURT: I'll deal with it later. I'm glad to see, sir, that I did get you to stand up. I appreciate it.

"McDONALD: Yes, sir, you provoke me, sometimes, to have to stand, Judge. I want to make sure that the record doesn't go silent when a response is perhaps required.

"COURT: I'll be glad to discuss it with you after this is over."

At the conclusion of the revocation hearing, the following transpired:

"COURT: Mr. McDonald and Mr. Dowdy, if you would, please stand.

"Gentlemen, during the progress of this matter — at the outset of the matter, the rule was invoked — Mr. McDonald, if I could have each of you — each one of you, your undivided attention, it would be appreciated.

"McDONALD: Yes, sir, I'm standing, Your Honor.

"COURT: The rule was invoked. I asked that all witnesses come around and be sworn. Both of you, apparently, didn't think that applied to the defendant's witnesses, and the defendant's witnesses were allowed by defense counsel to remain in the courtroom, the court not knowing who the witnesses were. Additionally, to you, Mr. McDonald, at the time, I asked you a question. You sat in your chair. When the court addressed to you, you did not stand up. You did not respond when requested by the court to do so, and as a matter of fact, in so doing, Mr. McDonald, I want the record to be perfectly clear, that your expression clearly indicated to the court that you were ignoring this court.

"Now, this court deems that this is a direct contempt of this court and will deal with each of you attorneys right now. The acts complained of are that each of you misbehaved as officers of the court, in your official capacity as an officer of the court, after the court — or you, Mr. Dowdy, asked that the witnesses be sequestered, and then both of you, as attorneys for the defendant, allowed the witnesses to remain in the courtroom, especially after the court said 'let all witnesses come around and be sworn.'

"This was in disobedience to a lawful order, or a command, if you want to call it that, of the court, which tended to obstruct the administration of justice. It was also the disobedience of a lawful order of the court.

"To you, Mr. McDonald, I have already said that you sat in your chair when asked a question by the court.

"The court is going to rule that these were contemptuous and insulting acts in the immediate view and presence of the court, which tended to obstruct the orderly administration and proceedings of the court and to impair the respect due the court and its authority.

"Gentlemen, I'm going to tell you something. I'm going to hold you in willful contempt of court but I'm going to impose no sanctions for this contempt, but I'm going to admonish both of you, each of you, to read the rules of this court, to respond to all requests and questions made by the court as gentlemen and also as officers of the court.

"Now, directing your attention to the prior confrontation that

you wanted mentioned, Mr. McDonald, you and I had a confrontation in a murder case in Lumpkin County, and we had one in Dawsonville. In Dawsonville, if my memory serves me correct, I asked you for a citation and you failed to give it to me. The record will reveal whatever that confrontation was. That ends the matter. You gentlemen are now warned. If you would like a copy of the transcript, I would be glad to supply it to you. I'm going to have it transcribed and I will keep it in the file, and henceforth, I expect you to abide by the requests, the orders and rulings of the court.

"McDONALD: May it please the court —

"COURT: That's the end of it, Mr. McDonald.

"McDONALD: May I be heard for just a moment?

"COURT: Certainly.

"McDONALD: Please the court, I would like an opportunity to study this matter. I would like an opportunity, at the proper time — maybe this is not the proper time — to respond to the court. It is apparent from the expression on your face and the tone of your voice that maybe now is not the right time, due to your —

"COURT: Mr. McDonald, the expression on my face is my normal expression, and the tone of my voice is my normal tone, when matters of this matter happen. I would caution you to be very careful as to what you say to the court. I have made a ruling. I will abide by this ruling. You can do whatever you desire to do, that are your legal avenues. But Mr. McDonald, I guess that I might sum it all up as saying that I don't understand the rules by which you and Mr. Dowdy operate, and I'm just making it perfectly clear that the way you are acting, and have acted — not have acted, the way you have acted in this courtroom today is not satisfactory with me, and it showed to me — talk about expressions on their face, the expression on your face when I asked you to stand, and the record is clear when I asked you to stand, bordered on being obnoxious.

"McDONALD: Well, maybe that is my usual expression too, Your Honor, and you —

"COURT: No, sir. I've seen enough of you to know that is not your usual expression, but I think you have seen enough of me to know that this is my usual expression.

"McDONALD: I would just like to conclude by saying this. I don't want to be contemptuous of the court. I don't want —

"COURT: I've held you in contempt. I've held both of you in contempt, willful contempt.

"McDONALD: I want to refute that by simply making the statement that I have not intended to be contemptuous to this court. If the court construes it that way, then I cannot take issue with that, except to say that it has not been intentional on my part. It's not been

willful on my part. I'm not arguing with Your Honor. It's just in times like these, when the court anticipated what you were going to do, and I have had no opportunity to anticipate what you were going to do, and to prepare myself for it, I stand here not having had the opportunity to prepare to respond, and I would like that opportunity to do so at an appropriate time.

"COURT: Mr. McDonald, again, you take any legal avenue that you want to. As I understand it, misbehavior in the presence of the court can be dealt with immediately, and that is the way I did it. As I have said before, I will repeat myself, I have imposed no sanctions for this willful contempt, but I do admonish you to act as a gentleman in the court.

"Mr. McDonald, whether you like me or not — we haven't addressed this subject, and it makes no difference — but whether you like me or not, whether you like any judge that you appear before or not, you are an officer of the court. You should be a gentleman. You should conduct yourself as a gentleman, and whether you like the man that is the judge, you should respect the court, if for no other reason than pure professionalism.

"I had not said anything in this trial, prior to all of this, to deserve the treatment that I received from you.

"McDONALD: Well, I take issue with that.

"COURT: If you take issue with it, then you should have done it at the time. But, Mr. McDonald, except for about three or four particular other individuals, this is probably the rudest that anybody has ever been to me in the courtroom, sitting there when I asked you a question, ignoring me, not responding. I didn't know whether you had lost you voice or not. You didn't say a word. You just looked at me — quite honestly, you looked at me like I was an idiot.

"McDONALD: No, Judge. I looked at you in utter amazement, because I didn't understand why you attacked me as you did, and I was dumbfounded. I was at a loss for words.

"COURT: That's an untruth, Mr. McDonald. You sat there with a look of contempt on your face like I was an idiot. I watched you. You can try to explain it away in the record all you want to. The order stands. The matter is ended. Don't say any more about it. Just have a seat. Go about you regular duties, or appeal the case. I'll have it typed. I'm not going to discuss it any more.

"McDONALD: Subject to that order, I'll take a seat, Your Honor.

"COURT: Thank you."

The Court of Appeals affirmed the trial court's finding the attorneys in contempt of court. *Dowdy v. Palmour,* 164 Ga. App. 804 (298 SE2d 521) (1982) (three judges dissenting in part). We granted

the attorneys' application for writ of certiorari to consider whether, as held by the Court of Appeals, the due process requirements of Taylor v. Hayes, 418 U. S. 488 (94 SC 2697, 41 LE2d 897) (1974), were satisfied, and whether the alleged contemptuous behavior correctly included the failure of the attorneys to have sequestered their own witnesses when they invoked the rule of sequestration while the state did not.

1. First we must address the motion to dismiss filed in this court by the district attorney on behalf of the judge. He contends that because no punishment was meted out by the trial court upon its finding of contempt that the case is not final, and hence is not appealable absent a certificate of review and our granting an application for interlocutory appeal. In so arguing, the district attorney relies on *In re Crudup,* 149 Ga. App. 214 (253 SE2d 802) (1979), where the Court of Appeals dismissed as not final an appeal by an attorney who was held in contempt, but no punishment was assessed. Accord, *Harrell v. Peteet,* 134 Ga. App. 210 (214 SE2d 5) (1975).

We need not decide here the correctness of the cases cited above because our jurisdiction in this case is predicated upon our grant of certiorari. Were we to grant the district attorney's motion to dismiss, our certiorari jurisdiction would be thwarted and the decision of the Court of Appeals in this case would prevail. The Court of Appeals decided this case on its merits and this court must not allow its certiorari jurisdiction to be defeated by granting the motion to dismiss. Accordingly, that motion is denied.

Nor do we find that the case here before us is moot. See Sibron v. New York, 392 U. S. 40, 52-54 (88 SC 1889, 20 LE2d 917) (1968); In re Stewart, 571 F2d 958, 966 (5th Cir. 1978). Clearly, where a trial court holds an attorney in contempt, but either does not punish him or does it by admonishment at that time, the attorney would never be able to appeal if the mootness doctrine were applicable.

2. The next issue is whether the requirements of due process were satisfied by the proceedings in the trial court. The leading case on this subject is Taylor v. Hayes, 418 U. S. 488, supra. That case holds as follows:

(a) A trial judge may find an attorney in contempt of court without trial by jury where the penalty actually imposed does not exceed six months.[1]

(b) During trial, a trial judge has the power, when necessary to

---

[1] See also Codispoti v. Pennsylvania, 418 U. S. 506 (94 SC 2687, 41 LE2d 912) (1974).

maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. The carrying out of the punishment announced during trial may be postponed until after trial.[2]

(c) Where the announcement of punishment is delayed, and where the contumacious conduct was not directed toward the judge and where the judge did not react to the contumacious conduct in such manner as to become involved in the controversy, the judge has the power to hold a contempt hearing at the conclusion of the trial and, after giving the attorney reasonable notice of the specific charges and opportunity to be heard, to impose punishment.

(d) Where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge.

In his dissent in Taylor v. Hayes, 418 U. S., supra, at 506, Justice Rehnquist said that the majority had limited the power of a trial judge to summarily punish for contempt to the point where a judge *"can* be driven out of a case" by contumacious counsel (418 U. S. at 530). The majority answered this criticism by saying ". . . this statement — perhaps dissenter's license — misconceives our holding and undervalues the import of the Due Process Clause." (418 U. S. at 503, fn. 10.)

Applying the requirements of due process as set forth in Taylor v. Hayes, supra, to the case at hand, we find that the trial judge did not proceed under (b), above, that the announcement of punishment (admonition) was delayed until the conclusion of the trial, that the allegedly contumacious conduct of Mr. McDonald in failing to stand and respond to the court was directed toward the judge, that thereafter the judge became involved in this controversy with Mr. McDonald, and thus under both prongs of the test set forth in (d) above, due process required that McDonald's contempt hearing be conducted by another judge.

Considering the sequestration of witnesses in isolation, the rule of Taylor v. Hayes set forth in (c) above might well be applicable to Mr. Dowdy, but in view of the fact that Mr. McDonald must be

---

[2] See also Farmer v. Strickland, 652 F2d 427 (5th Cir. 1981).

afforded a hearing as to both alleged contempts before another judge, we find that Mr. Dowdy is similarly entitled to such a hearing.

3. The statute granting the right of sequestration of witnesses, OCGA § 24-9-61 (Code Ann. § 38-1703), provides: "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other." In *Hall v. Hall,* 220 Ga. 677, 679 (141 SE2d 400) (1965), we held that "the statute . . . requires only that witnesses of the *other party* be examined out of the hearing of *each other.*" (Emphasis in original.)

However, the Court of Appeals held in *Jones v. State,* 60 Ga. App. 828, 830 (5 SE2d 404) (1939), that where the defendant requested that the state's witnesses be sequestered, but the state did not request that the defendant's witnesses also be sequestered, the court could, in its discretion, order sequestration of all witnesses. Thus, on retrial here, it will be necessary to determine whether it should have been clear to probationer's counsel that the court intended to invoke the rule of sequestration as to the probationer's witnesses. Such proof may involve any custom or practice of the court known to counsel. Our decision that another judge should hear this matter is reinforced by the fact that the judge may be called as a witness as to his practice in this regard.

*Judgment reversed. All the Justices concur, except Smith, J., who concurs specially, and Gregory, J., not participating.*

DECIDED JUNE 16, 1983.

*Douglas W. McDonald, Sr.,* for appellants.
*Andrew Dowdy,* pro se.
*Bruce L. Udolf, District Attorney,* for appellee.

SMITH, Justice, concurring specially.

I would also reverse, but for the reason that the evidence in the record does not support the trial court's finding of contempt.