### A92A0800. In re GOUGE.
(425 SE2d 882)

Cooper, Judge.

Appellant, an attorney, appeals the judgment of contempt entered against him for inviting opposing counsel to "take it outside." On appeal, he contends that the evidence was insufficient to support the trial court's finding of contempt and that the trial court should have held an evidentiary hearing prior to imposing punishment.

At the trial of appellant's client for driving under the influence and other vehicular offenses, the State began to show the jury a videotape of the client's arrest. Although such tapes are admissible with proper foundation, this particular tape contained a reference by appellant's client to a prior DUI arrest which the trial court had tentatively ruled should not be discussed. When this portion of the tape was reached but before the jury heard the reference to the prior arrest, appellant objected, and the tape was stopped. Appellant also moved for a mistrial, arguing that the State was going into evidence that "a first-year law student should know would not be gone into" and had engaged in "clear-cut misconduct." While addressing the merits of the motion, counsel for the State asserted that appellant's personal criticisms were improper and that appellant's comments should be addressed to the court rather than to opposing counsel. The court agreed: "THE COURT (to appellant): Well, I'll note that, while you were making your comments, you were glaring somewhat at [the State attorney], so I think his response is well taken. I believe that there was a legitimate issue that was arguable on both sides. I'm inclined to think the objection is good. [But] I think the State was within its rights to argue it's admissible on the grounds stated, so the motion [for mistrial] is denied. And, Mr. Gouge, such comments as 'first-year law student,' and that sort of thing, [are] somewhat improper, I believe, and you should be careful to avoid those sort of remarks and interjecting personalities into your arguments — your defense which you are — seems to me wont to do occasionally in your enthusiasm. All right, I'm going to bring the jury back in now. . . ."

Immediately after receiving this admonition, however, appellant made inappropriate comments to opposing counsel as they walked back to their seats. The jury was once again sent out, and the following colloquy occurred: "COUNSEL FOR STATE: I would like to state for the record what Mr. Gouge just said to me, and I'm not stating it for any other purpose but that it be on the record. He's been glaring at me throughout this whole trial and has made this personal.

It's not personal to me. I'm a representative of the State trying to present a case. I have nothing against Mr. Gouge nor his client whatsoever. He has glared at me; he has said that I have made mistakes that a first-year law student would not have made, when actually all I was trying to do was present the State's evidence, which I have a right to do. Then, after the Court told him to quit glaring at me and refrain from making such comments, he looked at me and said, "Do you want to take it outside?" I then approached the Bench and informed the Court that he said that and has made this personal; and, as Mr. Gouge walked away from the Bench, he looked at me and said, "Pussy." I do not wish to tolerate this and ask that the Court admonish Mr. Gouge.

"THE COURT: All right, Mr. Gouge.

"MR. GOUGE: I said — I told him, you know, we'd take it outside later. He kept glaring at me. The Court had just admonished me about making the remark which, quite frankly, I resented the attempt to do what the Court had told the State not to do. And he kept glaring at me after this happened, you know, and I told him, yeah, I said, 'If you want to take it outside.' It's got no place in the Courtroom, I agree with it. But I said nothing to him of that.

. . .

"COUNSEL FOR STATE: He's invited me out into the street to fight is what he's done.

"THE COURT: I've heard it; I've heard it."

Based on appellant's admission that he invited opposing counsel outside, the judge immediately found appellant in contempt but waited until the jury was deliberating to impose punishment.

1. Appellant first argues that his admission that he invited opposing counsel, in court and in the presence of the judge, to "take it outside," was not a sufficient basis for a finding of contempt. "[O]n appeal of a criminal contempt conviction the appropriate standard of appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Cits.]" *In re Irvin*, 254 Ga. 251 (2) (328 SE2d 215) (1985). " 'Criminal contempt is that which involves some disrespectful or contumacious conduct toward the court.' [Cits.]" *In re Henritze*, 181 Ga. App. 560, 562 (353 SE2d 58) (1987). " 'Contempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court. . . .' [Cit.]" *In re Bergin*, 178 Ga. App. 454, 455 (343 SE2d 743) (1986). Viewing appellant's admitted comment in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that appellant was being wilfully disrespectful and disobedient to the court when he invited opposing counsel to continue their dispute

outside the courtroom despite the court's ruling, particularly in light of the court's reprimand and admonition to appellant immediately prior to that invitation. That appellant's comment was directed toward opposing counsel rather than the judge does not change this conclusion. In *Dowdy v. Palmour*, 251 Ga. 135 (2) (304 SE2d 52) (1983), the Georgia Supreme Court discussed various ways in which trial courts may respond to and deal with contemptuous acts; and in doing so, the Supreme Court distinguished between contemptuous acts directed toward the judge and contemptuous acts not directed toward the judge, indicating that both can constitute contempt of court. Thus, from *Dowdy* it would seem that if an in-court statement is wilfully contemptuous of the court and its authority, the fact that the statement is directed toward another party rather than toward the judge does not preclude the statement from providing the basis for a judgment of contempt.

Appellant argues that "[c]ommon vulgarity, simple discourtesy, angry emotional outbursts, want of civility or professional demeanor" are insufficient grounds for a finding of contempt unless or until they interfere with the court's ability to administer justice, citing Johnson & Reaves, "Contempt of Court in Georgia," 23 Ga. St. B. J. 66 (1986). Appellant's comment in this case went beyond vulgarity or discourtesy to actually challenge the authority of the court, however. Indeed, it is difficult to conceive of a notion more disruptive of the ability of the court — in its broad, institutional sense — to administer justice than the notion that parties can or should continue their disputes through fighting outside the courtroom if they are not happy with the court's ruling. The court's power to respond to such challenges to its authority " ' " 'is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them.' " [Cit.]' [Cit.]" *In re Spruell*, 200 Ga. App. 218, 227 (2) (407 SE2d 451) (1991).

We therefore hold that the trial court did not err in finding appellant in contempt of court based on his admitted comment to opposing counsel.

2. Appellant also contends that the trial court should have held an evidentiary hearing before imposing punishment for contempt. "Where the announcement of punishment is delayed [after the court declares conduct committed in its presence to be contemptuous], and where the contumacious conduct was not directed toward the judge and where the judge did not react to the contumacious conduct in such manner as to become involved in the controversy, the judge has the power to hold a contempt hearing at the conclusion of the trial and, after giving the attorney reasonable notice of the specific charges

and opportunity to be heard, to impose punishment. . . . Where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge." *Dowdy*, supra at 142. Contrary to appellant's argument, *Dowdy* does not hold that an evidentiary hearing must be held prior to punishment whenever announcement of punishment is delayed. While it does hold that the party adjudged in contempt must be given the opportunity to be heard prior to announcement of punishment, the nature of the hearing required will depend on the circumstances. In this case, the judge could impose punishment himself because he was not the direct object of the contemptuous conduct and did not become involved in the controversy. The judge gave appellant the opportunity to be heard prior to imposing punishment, but determined that an evidentiary hearing was not necessary. Under the circumstances of this case, we find no error in this procedure.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

Decided September 25, 1992 —
Reconsideration denied November 25, 1992 ▮▮▮▮▮▮▮▮

*Millard G. Gouge*, pro se.
*Kupferman & Ransopher, Drew Findling*, for appellant.
*Jack O. Partain III, District Attorney, David W. McLeod, Assistant District Attorney*, for appellee.