A93A2345. IN THE INTEREST OF A. L. L. et al., children.
(440 SE2d 517)

ANDREWS, Judge.

Lankford, the natural father of two daughters, Am. L. L. and Al. L. L., appeals the judgment of the juvenile court which found the children deprived and placed temporary custody in Koziarz, the natural mother and former wife of Lankford.

1. Although not raised by the parties, we first consider the issue of our jurisdiction and whether this matter is one involving child custody, requiring an application to appeal. OCGA § 5-6-35 (a) (2).

Lankford and Koziarz were divorced in May 1992 and legal custody of the two daughters was placed in Lankford with regularly scheduled visitation by Koziarz. In November 1992, Koziarz filed a document with the juvenile court which formed the basis for the issuing of a petition by the court intake officer alleging that the children were deprived. Based on that petition, the juvenile court held a deprivation hearing on February 25 and 26, 1993. Although not contained in the record before us, an earlier hearing apparently had been held at which "probable cause" regarding deprivation was found by the court and Lankford was directed not to physically discipline the children and to engage in family counseling.

"A deprivation proceeding is to determine whether the child is a deprived child. OCGA § 15-11-33 (a). If the child is found to be deprived, the court is authorized to allow the child to remain with his parents, or other custodian, or transfer *temporary legal custody* to another individual or agency. OCGA § 15-11-34 (a). Although the juvenile court is authorized to determine who will exercise custody over a 'deprived' child, the proceeding itself is to determine whether the child is deprived and is not an action brought to decide custody matters concerning the child." (Emphasis supplied.) *Anderson v. Sanford*, 198 Ga. App. 410, 411 (401 SE2d 604) (1991).

Therefore, this court has jurisdiction to consider this appeal.

2. In his first enumeration, Lankford contends that the juvenile court was without jurisdiction to consider the issue of a modification of the final divorce decree by a change in the custody of the children.

This, however, is not what the juvenile court considered. The issue before it was whether or not the children were deprived. "The juvenile court had exclusive original jurisdiction over the deprivation proceedings, OCGA § 15-11-5 (a) (1) (C), and it had the authority to order disposition best suited to the needs of the children, [including

the transfer of temporary legal custody] OCGA § 15-11-34 (a) (2) (A)." *Edgar v. Shave*, 205 Ga. App. 337, 338 (1) (422 SE2d 234) (1992).

3. Lankford contends the court erred in finding him in contempt and fining him $50 for his violation of the rule of sequestration "in the midst of the case in chief."

At the beginning of the trial, which was conducted by the judge without a jury, Lankford, through his trial counsel, invoked the rule of sequestration and this request was joined by the prosecutor. OCGA § 24-9-61.[1]

Lankford testified and during cross-examination was asked if his mother had been beaten by his father. Part of the State's theory was that Koziarz had been abused by Lankford and that abusing husbands were more likely to become abusing parents. There was expert testimony to this effect and also to the effect that children who grew up in abusing families were more likely to abuse than those who did not. Lankford denied any such abuse. Later, his mother testified in his behalf. As she was being cross-examined, she acknowledged that she had spoken to Lankford and his trial attorney outside the courtroom after he had testified and before she testified. She was asked: "Q. What did [Lankford] tell you was said in here today about you? A. Only thing he said that they accused — my husband had been accused of beating me and that is not so." The prosecutor stated "Judge, we have a little problem here." The court agreed and asked Lankford if he had discussed his testimony with his mother. Lankford denied "discussing" it with her, but acknowledged that "[s]he heard me say something to the effect that my dad was accused of being a wife beater." His mother acknowledged having heard that and the judge asked Lankford if he had understood the rule of sequestration. He stated that "You said not to discuss testimony at all, but I was not discussing it with her." After further inquiry, the court found Lankford in contempt for violating the rule and fined him $50.

Pretermitting the question of whether the rule prohibits only witnesses being examined in court in the presence of each other or also prohibits out-of-court communications between witnesses, compare *Boyd v. State*, 168 Ga. App. 246 (5) (308 SE2d 626) (1983) with *Lackey v. State*, 246 Ga. 331 (5) (271 SE2d 478) (1980) and *O'Kelley v. State*, 175 Ga. App. 503 (1) (333 SE2d 838) (1985), Lankford acknowledged awareness of the court's direction that testimony should not be discussed among witnesses. Such a ruling was within the discretion of the court. *Barber v. Barber*, 257 Ga. 488 (1) (360 SE2d 574)

---

[1] "[I]n all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness."

(1987).

Juvenile courts are authorized to punish for contempt for disobedience of an order of the court or for obstructing or interfering with its proceedings. OCGA §§ 15-11-62; 15-1-4.

Lankford argues that he was denied due process because the contempt matter was taken up in the midst of the case-in-chief and no rule nisi issued providing for notice of the charges and an opportunity to be heard. At the time the matter of violating the rule was brought up, no objection was voiced by Lankford or his counsel to proceeding at that time with the inquiry. In fact, Lankford defended himself by arguing that what he engaged in was not "discussing" the testimony. "[W]here a party charged with contempt voluntarily appears and defends against the contempt proceedings, it is not required that he be served with a rule nisi. [*Crocker v. Crocker*, 132 Ga. App. 587, 590 (1) (208 SE2d 602) (1974).]" *Mijajlovic v. State*, 179 Ga. App. 506, 507 (1) (347 SE2d 325) (1986). Therefore, there is no merit to this argument.

While conducted at the time the incident was discovered instead of waiting until after the case-in-chief concluded, the opportunity provided for defense complied with due process requirements and the error, if any, in not waiting until completion of the case-in-chief was harmless. See *Dowdy v. Palmour*, 251 Ga. 135, 141 (2) (304 SE2d 52) (1983); *In re Spruell*, 200 Ga. App. 218, 229 (407 SE2d 451) (1991) (special concurrence); *Moody v. State*, 131 Ga. App. 355, 358 (206 SE2d 79) (1974).

The evidence was sufficient for a finding of contempt. *Arnold v. McKibbins*, 210 Ga. App. 262, 265 (6) (435 SE2d 685) (1993); *In re Gouge*, 206 Ga. App. 462 (425 SE2d 882) (1992).

4. The fifth and sixth enumerations are considered together and assert that the court erred in not sua sponte recusing itself after finding Lankford in contempt and expressing opinions regarding his truthfulness which, "were they expressed before a jury, would have been grounds for mistrial."

The latter contention presents nothing for our review since this trial was not conducted before a jury and no motion for mistrial was made.

No authority is cited for the proposition that the court should sua sponte recuse itself and we are aware of none. No motion to recuse having been made, there was no error. *Stoddard v. Tax Assessors*, 173 Ga. App. 467, 469 (3) (326 SE2d 827) (1985).

5. The third and fourth enumerations are that the court erred by not articulating the "clear and convincing evidence" standard in its order and in various evidentiary rulings. The seventh enumeration is that the court abused its discretion "in not giving sufficient weight to the testimony of appellant and of appellant's witnesses, which testi-

mony conflicted with testimony of appellee's witnesses." These enumerations are considered together.

" 'Our responsibility on appeal is not to weigh the evidence and give a de novo opinion as to the weight of the evidence but merely to determine if there is sufficient evidence to authorize the trial court's judgment.' [Cit.]" *Thomas v. State*, 173 Ga. App. 810, 812 (2) (328 SE2d 422) (1985).

" ' "The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test, is not met." ' [Cit.]" *In the Interest of H. M. T.*, 203 Ga. App. 247, 249 (416 SE2d 567) (1992).

The standard of clear and convincing evidence bound the trial court, even though those words are not stated in the order. "The trial judge is presumed to know the law [cit.] and presumed to 'faithfully and lawfully (perform) the duties devolving upon it by law.' [Cit.]" *Windom v. State*, 187 Ga. App. 18, 19 (2) (369 SE2d 311) (1988); *In re R. L. Y.*, 181 Ga. App. 14, 16 (351 SE2d 243) (1986). "[T]his court will not presume the trial court committed error where that fact does not affirmatively appear." *Smith v. Manley*, 96 Ga. App. 158, 161 (99 SE2d 534) (1957). See *Fortson v. Fortson*, 195 Ga. 750, 758 (3) (25 SE2d 518) (1943).

Likewise, none of the evidentiary rulings constitute reversible error.

As to the allegation that the court did not adequately value Lankford's evidence, as stated above, weighing the evidence is the province of the factfinder and this court will not second guess it when the appellate standard is met. Here, that standard is met since we conclude that a rational factfinder could have found the children deprived.[2] Lankford had physically abused Koziarz in the past, causing her to be taken to the emergency room on more than one occasion. While in his custody, the children were placed on 27 days restriction for having spoken to Koziarz in a public place. Koziarz and her relatives were not allowed to speak with the children when they called. Am. L. L. was thrown on the couch by Lankford and held down by his knees while he struck her, resulting in a large bruise on the back of her leg. Instances of inadequate medical attention for the children were related. Also, Al. L. L. reported that Lankford's nephew had played with her "privates" while she was in Lankford's custody. The evidence was sufficient.

---

[2] This conclusion is based on the record before us. Additionally, without objection from Lankford, the trial judge spoke privately with the two children in chambers.

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

Decided January 28, 1994.

*John W. Knapp, Jr.*, for appellant.
*Alan C. Manheim, Lewis P. Perling*, for appellee.