A98A2240. BARLOW v. THE STATE.
A98A2241. IN RE HARVEY et al.
(513 SE2d 273)

POPE, Presiding Judge.

Byron Barlow appeals from the trial court's order denying his plea in bar on double jeopardy grounds. Barlow's attorneys, Bruce Harvey and W. Sander Callahan, appeal from the trial court's order

holding them in criminal contempt of court when they both refused to comply with the court's order to try Barlow's case. We consolidate these cases for purposes of this appeal and, for the reasons below, affirm.

On August 4, 1995, Byron Barlow was indicted in Fulton County on the charge of rape. Two months later, Bruce Harvey, Pete Whitlock, and David West made an entry of appearance as Barlow's counsel of record. Harvey filed several discovery and pre-trial motions, including a preliminary motion to suppress. On May 15, 1997, the state served Harvey with its responses to Barlow's discovery requests. On May 21, 1997, Harvey filed a conflict letter in the case, stating that he was lead counsel in the case and that the case "could not be handled, nor [his] client's best interests protected by other attorneys in [his] firm." On the following day, May 22, 1997, Callahan made his first appearance as an attorney of record for Harvey's firm by filing, among other pleadings, a demand for production of evidence and a motion to continue the case from the May 27, 1997 calendar. Harvey was also listed as counsel on these pleadings. In a letter to the assistant district attorney handling the case, Callahan referred to Harvey as "lead counsel."

On June 3, 1997, Barlow appeared for arraignment, entered a plea of not guilty, and proceeded to trial. He was represented at this first trial by Harvey and Callahan. And, although we have not been provided a copy of that trial transcript, it appears from the record before us that Harvey took the lead in that trial. On June 10, 1997, the trial court entered an order declaring a mistrial. Following the grant of mistrial, Barlow filed a plea in bar on former jeopardy grounds which was apparently denied.

When the case appeared on the September 1997 trial calender, both Harvey and Callahan filed conflict letters. The case was re-scheduled and called for re-trial on January 6, 1998. The state presented the testimony of three witnesses and rested on January 9, 1998. The defense did not present any evidence, nor did Barlow testify. Although Callahan represented the defendant through most of the trial, West assisted briefly on the last day of the trial.

The jury then deliberated for one and one-half hours before announcing they were deadlocked "at two to ten." The court gave the jury an *Allen* charge." Shortly after the court sent the jury back out to deliberate, Callahan made a motion for a mistrial. In response to that motion, the court retrieved the jury and asked the foreman if the jury was making progress; the foreman responded "yes." Because the hour was late, the judge said he wanted to release the jury for the weekend. The foreman asked for ten more minutes of deliberation, which the judge granted. When the foreman reported back, he said: "I think it's been a lot of soul-searching in the last hour taken, and I think its probably deadlocked. I don't know if I sat there for another

several days it would mean anything." The judge, however, directed that they resume their deliberations the following Monday morning at 9:30 a.m. After about 30 minutes of deliberation that Monday morning, the foreman announced that the jury was hopelessly deadlocked. The court, therefore, granted a mistrial. That evening, the court called Callahan and told him to report back the following morning. On the morning of the third retrial, Callahan filed in open court a motion for a continuance, stating that he was ill and referencing several medical appointments that he had apparently mentioned to the court in the prior week's trial. The judge gave Callahan time to get a letter from his doctor that said, specifically, that he was not able to try the case. The judge also told Callahan to call Harvey and have him report to court. Before carrying out the judge's instructions, Callahan told the court that he had filed a plea in bar on former jeopardy grounds claiming the court abused its discretion in granting a mistrial. The judge denied the plea summarily.

After a recess, Callahan and Harvey returned to court. Callahan presented a letter from his doctor that referenced Callahan's medical condition, but did not state that his condition prevented him from trying the case. The judge indicated that this letter was insufficient and ordered the case to trial. After a brief discussion of pending motions, the court recessed the case until the following morning.

On January 14, 1998, the court again called the case for trial. In the interim, Callahan furnished the court with another letter from his doctor, but this letter, too, failed to specifically state that Callahan was physically unable to try the case. The court also found this letter to be insufficient and directed the parties to proceed to trial. During jury selection, Callahan insisted that he could not go on due to his medical condition and then turned his back on the jurors — conduct the court believed was a tactic to taint the jury.

When Callahan refused to try the case, the judge allowed Barlow to call Harvey back to court. The court advised both Callahan and Harvey on the record that Callahan had not gotten an excuse from his doctor, that he had refused to proceed, and that he had turned his back on the jury. The court instructed Harvey to take over Barlow's defense. Harvey refused, saying that he had been in court and preparing for other matters and that he was not prepared to proceed to trial. He added: "With all due respect to your honor, it would be my position if your honor forces me to trial I would at every stage stand up and announce that I am unprepared to go forward, unwilling to go forward and not being able to represent Barlow."

The judge then warned Harvey that if he persisted with such conduct he would be held in contempt. The judge made it clear that counsel were required to go forward with the trial, but gave them an opportunity to state their position and make a record. Harvey introduced over 400 pages of documents in support of his position that he

was unprepared for trial and said: "So, whatever action you feel is appropriate I understand that you feel is appropriate." In response, the court found that Callahan and Harvey were engaging in delaying tactics, that Callahan had not obtained a doctor's excuse from trial, and that Harvey was lead counsel and had tried the case before and thus should be able to proceed.

The judge then gave both attorneys one more chance to proceed to trial. Again, both attorneys refused to proceed. The court concluded:

> [A]fter having heard from both counsel, having gone through these proceedings, finds that neither counsel is unable to go forward with this case. Those are the facts as I find them based on the record and available here for you to review, and the court has ordered you to go to trial. Both of you have refused to go forward and continue to cause disturbance, and the court hereby finds you in contempt of court. I sentence you to ten days in jail and five hundred dollar fine.

The attorneys, who were immediately taken into custody, filed an emergency motion for supersedeas with this Court. We granted supersedeas in the case and ordered that Harvey and Callahan be released instanter and issued a further finding that Judge Jenrette had abused his discretion by incarcerating the attorneys without a written order. The following day the judge entered a detailed written order setting forth his factual findings and conclusions of law.

### Case No. A98A2240

1. Barlow contends that the judge lacked manifest necessity to declare his second trial a mistrial, and therefore, he argues that a third re-trial in his case would violate the bar against double jeopardy.

We find, however, that the trial court did not err in denying Barlow's plea in bar on former jeopardy grounds. The second mistrial was declared following Barlow's own motion and after the trial court had determined that the jury was hopelessly deadlocked. As we have repeatedly held, "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which the defendant was subjected." (Citation and punctuation omitted.) *Rower v. State*, 267 Ga. 46 (472 SE2d 297) (1996). See also *Bierria v. State*, 232 Ga. App. 622, 625 (2) (502 SE2d 542) (1998); *State v. LeMay*, 186 Ga. App. 146 (1) (367 SE2d 61) (1988). Moreover, Callahan had moved for a mistrial on behalf of Barlow, and thus Barlow cannot now complain that a mistrial was granted. "It is well settled that on appeal a party cannot complain of a judgment, ruling, or order that his own trial procedure, legal strategy, or conduct pro-

cured or aided in causing. [Cit.]" *Ellerbee v. State*, 215 Ga. App. 312, 313 (2) (450 SE2d 443) (1994). Accordingly, we find this appeal to be without merit.

### Case No. A98A2241

2. In their first enumeration of error, Harvey and Callahan contend the trial court erred in not allowing them a hearing, counsel, and the opportunity to present evidence in mitigation of their sentence.

> During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing.

*Dowdy v. Palmour*, 251 Ga. 135, 141-142 (2) (b) (304 SE2d 52) (1983); *In re Brant*, 230 Ga. App. 283, 285 (2) (496 SE2d 321) (1998). Further, direct summary criminal contempt that occurs

> "in the presence of the court *and* tends to scandalize it and hinder or obstruct the orderly processes of the administration of justice, the preservation of order and decorum in the court, etc. is exempt from the due process requirements of notice and hearing. [Cits.]"

(Emphasis in original.) *In re Hasty*, 215 Ga. App. 349, 350 (450 SE2d 848) (1994).

Callahan and Harvey moved for a continuance, but failed to substantiate the grounds for it. Consequently the motion was denied, and they were directed to proceed to trial. Instead of proceeding to trial and then pursuing their appellate remedies, they chose to disobey a direct, lawful order of the court. The court warned counsel their behavior was contumacious and gave them an opportunity to be heard and to make a record. The court even gave counsel one last chance to redeem themselves and go forward to trial. They refused. Under these circumstances, we find that the trial court was entitled to enter a summary order of direct contempt without a further hearing.

3. In their second enumeration of error, Callahan and Harvey contend the trial court should have recused himself sua sponte and allowed another judge to determine if their conduct was contumacious and, if so, decide what sentence to impose. However, neither Harvey nor Callahan moved for recusal, and it is well settled that if an "appellant fails to make a motion to recuse, there is no error.

[Cits.]" *In re Brant*, 230 Ga. App. at 285 (2). See *Dowdy v. Palmour*, 251 Ga. at 142 (2) (b). Moreover, although recusal may be required in some contempt proceedings, this requirement generally does not apply in cases of direct contempt. Cf. *In re Crane*, 253 Ga. 667, 668 (1) (324 SE2d 443) (1985).

4. Finally, Callahan and Harvey argue that the evidence is insufficient to support their convictions for criminal contempt beyond a reasonable doubt.

> On appeal of a criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Criminal contempt is that which involves some disrespectful or contumacious conduct toward the court. Contempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court.

(Citations and punctuation omitted; emphasis in original.) *In re Gouge*, 206 Ga. App. 462, 463 (1) (425 SE2d 882) (1992). "Implicit within the definition of direct, summary contempt is a finding that the conduct is in the presence of the trial court and results in an interference with the court's ability to administer justice." *In re Adams*, 215 Ga. App. 372, 375 (450 SE2d 851) (1994). See also *In re Brant*, 230 Ga. App. at 284-285 (1).

Both Callahan and Harvey wilfully disobeyed the court's direct, lawful order to proceed to trial. Their refusal to go forward is amply supported by the record. Whether they believed their disobedience was justified is irrelevant. "Because [counsel] disregarded the court's command, [they] disrupted court proceedings and interfered with the orderly administration of justice. See OCGA § 15-1-4 (a); *In re Shafer*, 216 Ga. App. 725, 726 (455 SE2d 421) (1995)." *In re Brant*, 230 Ga. App. at 284 (1).

*Judgments affirmed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED MARCH 2, 1999 —
RECONSIDERATION DENIED MARCH 19, 1999 — ▮▮▮▮▮▮▮

*Bruce S. Harvey, Michael R. Hauptman, W. Sander Callahan*, for appellant (case no. A98A2240).

*Michael R. Hauptman, Robert H. Citronberg*, for appellants (case no. A98A2241).

*Paul L. Howard, Jr., District Attorney, Angela M. Dannelly, Cari*

*K. Johanson, Bettieanne C. Hart, Assistant District Attorneys*, for appellee.