## 69662. THOMAS v. THE STATE.
(330 SE2d 412)

BIRDSONG, Presiding Judge.

The appellant Dwight Thomas, a lawyer, was representing a criminal defendant in the DeKalb Superior Court and requested to speak to Judge Keegan Federal in his chambers. Judge Federal invited the assistant district attorney to accompany them. Thomas advised Judge Federal that he had "some personal problems" and needed to be out of town the following Monday, April 2, 1984. Judge Federal excused Thomas for Monday but set the case for Tuesday, April 3. Thomas did not appear in court on April 3 and at 1:00 p.m., Judge Federal asked the assistant district attorney to locate Thomas. He was unsuccessful and Judge Federal instructed him to prepare an order of attachment for Thomas. At approximately 2:00 p.m., Thomas called Judge Federal and stated that he had heard that an arrest warrant or contempt citation had been issued for him. Judge Federal asked him why he had not come to court, and Thomas said he was exhausted. Judge Federal stated that during this conversation, he recalled Thomas said he had driven to Georgia from North Carolina on Monday. On the other hand, Thomas said he told the judge that he had driven in from North Carolina on Tuesday — that morning. The judge recalled that when he reset the case for Tuesday morning, he had directed Thomas to appear in court at 10:00 a.m. Thomas stated that he had not been directed to report at a particular hour but was "on call" and the hour of 10:00 a.m. had not been mentioned. The assistant district attorney's recollection was that Thomas had been excused only for Monday and he could not say whether 10:00 a.m. was mentioned.

Judge Federal directed Thomas to report to the court immediately. Thomas did not come to court, but an attorney appeared on behalf of Thomas approximately two hours later and stated that he did not know whether Thomas was coming to court because Thomas had heard an arrest warrant has been issued and did not want to be locked up, and he could not find Thomas. About five minutes after the attorney left, Thomas walked in. At that time Judge Federal proceeded with an inquiry into the circumstances of Thomas' failure to

appear in court on Tuesday, April 3. Thomas stated: "Your Honor, before we proceed, if the Court is taking some action against me, I don't know, you know, I'd like to have an opportunity for a hearing and a lawyer." Judge Federal proceeded with the inquiry, found Thomas in contempt and sentenced him to pay a fine of $200 and serve 20 days in the DeKalb County jail. The confinement was suspended. Thomas was directed to pay the fine before noon, May 25, 1984. A motion for supersedeas was filed on May 24 but it was never ruled on. The record reflects that Thomas filed a notice of appeal with the DeKalb Superior Court at 11:33 a.m. on May 25 and the case was filed in this court on September 24, 1984. The record does not show whether the fine was paid. *Held*:

This was an indirect criminal contempt action. See 6 EGL 3-4, Contempt, §§ 3-6. The disobedience of Judge Federal's order was not in his immediate presence and the contempt action was to secure obedience to future orders. Here, as in *Taylor v. Hayes*, 418 U. S. 488, 497 (94 SC 2697, 41 LE2d 897), "[w]e are not concerned . . . with the trial judge's power, for the purpose of maintaining order in the courtroom, to punish summarily and without notice or hearing contemptuous conduct committed in his presence and observed by him. [Cit.] The usual justification of necessity [cit.] is not nearly so cogent when final adjudication and sentence are postponed until after trial." Judge Federal employed a summary contempt procedure here in an indirect criminal contempt, as opposed to a direct contempt in the immediate presence of the court, where it is authorized. *Taylor*, supra, p. 497; and also see 6 EGL 3, Contempt, § 5.

It appears from Judge Federal's order that Thomas was found in contempt for a failure to report at 2:00 p.m. on Tuesday, April 3, and for a failure to report immediately to the court when he called Judge Federal but sent another attorney in his place. Accordingly, it would appear that counsel was punished for two contempts. We find this important when viewed in the context of lack of notice of what the alleged contemner was supposed to defend himself against. The Supreme Court noted that "(s)ummary punishment always, and rightly, is regarded with disfavor. . . . [Cit.] (W)e have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.' " *Taylor*, supra, p. 498. "*Groppi* [*v. Leslie*, 404 U. S. 496 (92 SC 582, 30 LE2d 632)] counsels that before an attorney is finally adjudicated in contempt and sentenced after trial and for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf. This is not to say, however, that a full-scale trial is appropriate." *Taylor*, supra, pp. 498-499. Hence, counsel should have been given notice of the conduct for which he was cited for contempt and should have been given the op-

portunity to be heard, through counsel, or pro se. Here, counsel was not given notice of the specific charge, or nature of the conduct which Judge Federal used in his citation of contempt, and Judge Federal refused him the opportunity to obtain counsel perhaps more versed in the defense of an alleged contemner. "[T]here is no overriding necessity for instant action to preserve order and no justification for dispensing with the ordinary rudiments of due process." *Codispoti v. Pennsylvania*, 418 U. S. 506, 515 (94 SC 2687, 41 LE2d 912).

*Judgment reversed. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED APRIL 3, 1985.

Dwight Lowell Thomas, *pro se.*
*Robert E. Wilson, District Attorney, Susan Brooks, Thomas E. Clegg, Assistant District Attorneys, Michael J. Bowers, Attorney General*, for appellee.