A91A0201. IN RE SPRUELL.
(407 SE2d 451)

McMURRAY, Presiding Judge.

Appellant Billy L. Spruell, attorney, appeals an order holding him in direct criminal contempt of court. Appellant was representing a client upon the trial of certain misdemeanor traffic offenses.

After voir dire, as counsel used the "silent strike" process customarily used for misdemeanor criminal cases in the DeKalb County State Court, the trial judge explained the procedure and other administrative matters to the jury panel. Thereafter, the following colloquy ensued: "MR. SPRUELL: Your Honor, may we approach the bench? THE COURT: Yes. (Whereupon, a sidebar conference was held off the record.) MR. SPRUELL: Judge, we are not getting it — THE COURT: Mr. Spruell, I said we would get it on the record after we pick the jury. Have a seat, Mr. Spruell, and take the strike. Have a seat, Mr. Spruell. MR. SPRUELL: Your Honor — THE COURT: Would you like to re-adjust your strikes? MR. SPRUELL: I have to go back and restrike the jury if this is the way — THE COURT: If you need time to re-adjust the strikes that you have already exercised, the Court will give you time to do that. MR. SPRUELL: All right. Judge, we were clearly told that I had four strikes and one strike — THE COURT: Excuse me, Mr. Spruell. I do not hear argument in the presence of the jury as you well know. I'm giving you extra time to re-adjust your strikes. You have approximately one minute to exercise your strike or you will forfeit that strike. Since you have five strikes, I will give you five minutes to re-adjust your strikes.

(Whereupon, the strike process continued.)

"THE COURT: All right. Members of the panel, as I call your name it means that you have not been selected to serve as a juror during the trial of this particular case and because it is one day, one trial, you are released for the week. You do not have to phone in. If anyone has misplaced or used your parking ticket, please let me know and I can give you one because you do have to pay $2.00 if you leave the parking deck before six o'clock. Kim Wieloch, juror number seven, you are excused. Thank you very much for coming up. Robert Sherill, juror number ten, you are also excused. Thank you very much. Don't forget to let me know if you need a parking pass. Mike Daniel, juror number 12, thank you very much. Eric Grant, number three, thank you. You are excused. Chris Davis, number five, you are excused, Ms. Davis. Thank you very much. Mr. Willie Martin, juror number six, you are excused. Thank you very much. Shirley Engel, juror number 13, you are excused and Kathryn Locklin is excused. Thank you, Ms. Locklin. All right. That means that Carol Bell will be the alternate in this case. Let me ask Ms. Bell to have a seat in the jury box with the rest of the panel. I'm going to give you an oath and then I'm going to find out if you need to use the phone and I'm going to take a brief recess.

"MR. SPRUELL: Your Honor did not ask if this is the jury we picked and I would like to be heard on that. THE COURT: Mr. Spruell, if you will please have a seat, I'm going to impanel the jury. I do not hear argument in the presence of the jury panel. I'm going to take a brief recess. Anything you would like to get on the record, we will get on the record at that time. Let me ask the members of the panel to stand for the oath that will impanel you as a member of this particular jury. (WHEREUPON, the oath was administered to the jury panel.)

"THE COURT: All right. Please be seated. Members of the panel is there anyone who needs to make a phone call? I'm going to take about a ten-minute recess. Let me ask that you take the recess outside of the courtroom. The bailiff will let you know when to come back into the courtroom. There is a phone in my office that my secretary can direct you to for making phone calls. (WHEREUPON, the jury panel was escorted out of the courtroom and the following proceedings took place outside of their presence.)

"THE COURT: All right. Let the record reflect that the jury has left the courtroom. Now, Mr. Spruell, before we get started we need to set some ground rules, and I didn't feel this was necessary because you have been in my courtroom before, but I will tell you once again. As you know, I do not hear legal argument in the presence of the jury. Anytime you have legal argument or a motion to make, the proper procedure is to inform the Court that you have a motion to make or

an objection to make outside of the presence of the jury. I am not going to tolerate your continually interrupting the Court or interrupting these procedures as has been your practice on numerous occasions in my courtroom. I'm only going to warn you once, Mr. Spruell, but you are bordering on contempt. I am not going to tolerate your taking over this case, repeatedly interrupting these procedures. If you have an objection to make on the record, you can state it at this time. MR. SPRUELL: Your Honor, we are generally asked — the defendant is generally asked whether or not that is the jury that he picked and that indeed was not the jury that we struck. The Court — and the record will clearly reflect this. The Court instructed both counsel for the defense, counsel for the State and the jury — of course, there was no need to discuss it with the jury but the Court saw fit to discuss it with the jury that — THE COURT: Mr. Spruell, just a minute. I'm not going to tolerate your spurious remarks indicating what the Court saw fit to discuss. What I discuss is within my discretion and control. You are the one who stood up in the presence of the jury and attempted to make legal argument. Now, as to the alternates, the Court has the discretion to allow either counsel or both counsel to use your total number of strikes in any manner in which you see fit, not only against the alternates. The Court may have indicated that you could use them against the set of alternates, but when it was brought to my attention that the State had used theirs against the main panel, I allowed defense counsel that same opportunity to use their five strikes in any manner that you saw fit. I even gave defense counsel an additional what amounted to ten minutes to re-adjust your strikes, and you utilized that time and you re-adjusted your strikes, and you used your five strikes in any manner in which you saw fit. It is within my sound discretion whether or not I require the attorneys to use their strikes only against the main panel or to use them as divided up among the alternates. Now, you can perfect the record but you were given ample opportunity to re-adjust your strikes and use them in any manner that you saw fit which you did. MR. SPRUELL: May I finish my objection now, please? THE COURT: Yes, sir. MR. SPRUELL: As I was saying, the Court saw fit to instruct counsel and the defense, the defendant and also in the presence of the jury to inform the jury as to how the striking was supposed to take place. The Court clearly instructed both counsel that we had four — that the defense has four strikes on the panel of 12 and the State has two, and that we would have an extra strike for the alternate jurors. The State used their alternate juror strike — after using all of their strikes on the panel of 12, they used their alternate strike on the main panel of 12, and it is clearly, clearly not allowed under the law. THE COURT: State your legal authority for that position. MR. SPRUELL: Well, I'm simply — there is legal authority for it no question about it.

THE COURT: Please state it for the record. MR. SPRUELL: The statute sets out — THE COURT: Please state the statute. MR. SPRUELL: — the number of strikes that we should have. THE COURT: Well, I'm familiar with the number of strikes and the number of alternate strikes that the Court can allow, and the number of alternate strikes and the number of alternates to select is a matter within my discretion. But state for the record the code section that requires that the strikes as to the alternates be used only against the alternates and that states that the trial judge has no discretion as to how the strikes can be used. MR. SPRUELL: You want me to state some authority that says that you only use the alternate strikes — THE COURT: State it for the record, Mr. Spruell. MR. SPRUELL: That are only used — THE COURT: Or sit down. State it for the record or sit down. MR. SPRUELL: I'm being interrupted, Judge. I'm trying to tell you — THE COURT: Mr. Spruell, you are in contempt. I'm going to fine you $500.00 for being contemptuous in front of the Court, for interfering with the administration of justice. Have a seat.

"MR. SPRUELL: Let me respond, please. THE COURT: Have a seat or I'm going to have the deputy take you away. MR. SPRUELL: Judge, you have to — THE COURT: This contempt was in the presence of the Court and I asked you to state for the record, and you stood there, laughed at the Court, asking me — MR. SPRUELL: I'm not laughing, Your Honor. THE COURT: Let the record reflect that Mr. Spruell is laughing, Your Honor. MR. SPRUELL: The record must reflect that I'm not laughing. THE COURT: Deputy, will you please take Mr. Spruell into custody. I think the law requires that I can fine you $500.00 and sentence you to 20 days in jail and at this time I'm going to have the deputy take you into custody and I am going to sentence you to 20 days in custody. You can take him away right now.

"MR. SPRUELL: Can I get my papers? May I call my lawyer? May I call my lawyer? THE COURT: I'm not your attorney, Mr. Spruell. You seem to have enough information to tell the Court what to do and I will reduce that order to writing posthaste, Sergeant Young. SERGEANT YOUNG: Thank you very much. MR. SPRUELL: Your Honor, my client wants to inquire as to what might happen to him in my absence, and I have to make that inquiry on his behalf. I'm not trying to be contemptuous, of course, but I need to make that inquiry. THE COURT: Well, obviously, Mr. Spruell, we are not going to proceed with the jury trial with your client's attorney in jail. Ms. Elmore, was there anything that the State wanted to add or offer or suggest? MS. ELMORE: No. Thank you, Your Honor. MR. SPRUELL: I would like to have a copy of the record as soon as possible. THE COURT: I don't type up the transcript. (WHEREUPON, Mr. Spruell was escorted out of the courtroom.)

"THE COURT: Mr. Foody, is there some reason you are smiling? Do you find this procedure funny? THE DEFENDANT: No. No, ma'am. THE COURT: Why don't you have a seat? THE DEFENDANT: Not at all. THE COURT: Why don't you have a seat? MS. ELMORE: I was just going to have somebody get notice so he could sign for the date, next date of the court. THE COURT: What I think I will do is bring the jury in and tell them we will no longer need them in this particular case and excuse them, and I suppose we will have to declare a mistrial because of Mr. Spruell's actions, and we will — let me see when his 20 days will be up. Okay. I'm going to specially set it for trial on Monday, October the 15th. MS. ELMORE: At nine o'clock, Your Honor? THE COURT: Eight-thirty. MS. ELMORE: Eight-thirty. THE COURT: All right. Mr. Turner, could you bring the jurors in?"

The following day, the trial court entered its written order finding appellant in direct criminal contempt. In the interest of clarity, we set forth the trial court's entire order:

### "ORDER FINDING ATTORNEY BILLY L. SPRUELL IN DIRECT CRIMINAL CONTEMPT OF COURT

"The above-styled criminal case came regularly before the Court for jury trial on Monday, September 24, 1990. The State was represented by Assistant Solicitor Ann Elmore. The Defendant [Michael John Foody] was represented by Attorney Billy L. Spruell.

"During the course of the trial and specifically during the voir dire examination and the jury selection process, the Court finds that attorney Billy L. Spruell conducted himself in a contemptuous and insulting manner in the immediate view and presence of the Court, such behavior totally obstructing the orderly administration and proceedings of the Court, necessitating the Court to declare a mistrial after a lengthy jury selection process. The Court makes the following findings of facts and conclusions of law:

### "FINDINGS OF FACT AND CONCLUSIONS OF LAW

"To facilitate the trial of the above-styled case, the Court, in its discretion, directed the Clerk of Superior Court, to send additional jurors to the courtroom to be designated as 'alternate jurors.' OCGA § 9-11-47 (b).

"The Court further finds that in misdemeanor criminal cases in the DeKalb County State Courts, it is the custom and practice of the State Courts to conduct a 'silent strike' process, whereby the attorneys do not have to announce in open court those jurors who are being excused from service. In misdemeanor criminal cases, the State is allowed two peremptory challenges and the defense is allowed four

peremptory challenges. The Court granted both the State and the Defense one additional strike each for purposes of selecting an alternate juror.

"The Court finds that while the attorneys were conducting the silent strike, the Court, in an effort to make the jury feel more at ease, and to familiarize the jury with the process that was taking place, attempted to explain the jury selection process in a conversational manner to the jury.

"The Court further finds that while talking with the jury, the Court indicated that there would be an alternate juror used during the jury trial, and, explained to the panel that the attorneys had been given additional strikes for that purpose to use against the panel of alternates.

"The Court finds that at no time did the Court ever direct the attorneys that the additional strikes could only be used against the panel of alternates. The Court notes that as a matter of custom and practice in the local state courts, it is customary for each individual judge to make a determination, within her discretion, as to whether or not the additional strikes can be used against the entire panel, or, only against the panel of alternates.

"OCGA § 9-11-47 (b) provides that: '. . . the additional peremptory challenge(s) may be used only against an alternate juror, and the other peremptory challenges allowed by law shall not be used against the alternates.'

"The code section, by its own terms, does not mandate that the additional peremptory challenges be used only against the alternate jurors. By inserting the word 'may,' the code impliedly leaves that determination to the discretion of the trial judge.

"The Court finds that after the State had exercised its third and final strike, and after the defense had exercised four of its five strikes, a bench conference was held whereby attorney Billy L. Spruell brought it to the Court's attention that the State had exercised its third additional strike against the panel of twelve, as opposed to using the State's third strike against the panel of three alternates.

"Because the Court had never directed the attorneys that they could not use their additional strike against the entire panel as opposed to only using the additional strike against the panel of alternates, the Court informed Mr. Spruell at the bench that the Court, within its discretion, would allow each attorney to use their additional strike in any manner in which they chose.

"The Court further finds that at that point, attorney Billy L. Spruell became belligerent and began to raise his voice at the Court, while leaning on the Court's bench and glaring at the Court in a menacing manner. Attorney Spruell then informed the Court that he would have to re-strike the jury because he had used his four strikes

against the entire panel and had not intended to use his additional strike in the manner that the Court had provided.

"The Court then informed attorney Spruell that the Court would give him additional time to reorganize his strikes and to use them in any manner he saw fit; including using all five strikes against the entire panel. At that point, attorney Billy Spruell again raised his voice at the Court and refused to lower his voice during the bench conference. The Court had to repeatedly ask Mr. Spruell to have a seat at counsel table, indicating that the Court would give attorney Spruell plenty of opportunity to perfect the record and make his objections as soon as the Court was able to recess the jury for a brief break.

"The Court finds that attorney Spruell still refused to have a seat at counsel table and began to raise his voice at the Court and glare at the Court in a menacing manner, such actions on behalf of attorney Spruell causing the Court to feel physically threatened by his actions. At that point, the Court requested that Court Services send a deputy to the courtroom for assistance.

"The Court further finds that members of the jury panel had also noticed Mr. Spruell's behavior and his demeanor and the tone of his voice, and the jury panel began to look at the Court with expressions of shock and dismay on their faces. The Court further finds that only until the Court sternly admonished Mr. Spruell to be seated did counsel have a seat at his table.

"The Court finds that after the strike process was completed and Mr. Spruell had readjusted his strikes, the jury was recessed in order for attorney Spruell to perfect the record.

"During the recess, Mr. Spruell indicated to the Court that the Court's decision to allow both the State and the defense to use their strikes against the entire panel was a violation not only of the case law but of statutory law. The Court and the State requested that Mr. Spruell cite his authority for the record. Mr. Spruell refused to do so.

"The Court then asked Mr. Spruell to cite any authority that he had to support his position for the record. At this point, Mr. Spruell began to openly laugh in the presence of the Court in a derisive and mocking manner. As the Court continued to ask Mr. Spruell to state his authority for the record, Mr. Spruell waved his hands in the air, continued to laugh in the presence of the Court, turned his back on the Court, and refused to respond to the Court's questions.

"When attorney Spruell refused to respond to a direct question of the Court, and continued to mock the Court and laugh in the presence of the Court, the Court asked attorney Spruell to be seated. Attorney Spruell refused to be seated and only with the assistance of the sheriff's deputy was the courtroom restored to order.

"The Court finds that Mr. Spruell was given an opportunity to address the Court, but refused to do so, and through his contemptu-

ous manner, totally obstructed the administration of justice and the orderly conduct of the trial. The Court finds that the only statements attorney Spruell chose to make to the Court after his arrest for criminal contempt, were if he would be allowed to call his attorney and could he have a copy of the transcript. The Court finds, that at no time, did attorney Spruell ever attempt to apologize to the Court for his behavior in open Court.

"Based on the foregoing, the Court finds that the actions and manner and behavior of attorney Billy L. Spruell constituted a direct criminal contempt that involved misbehavior in the presence of the Court or so near thereto as to obstruct the administration of justice. OCGA § 15-1-4 (a) (1). The Court further finds, that attorney Spruell treated the Court with disrespect, ridicule and mockery in open Court, in the presence of the jury, in the presence of the State's attorney, and in the presence of those persons seated in the audience of the courtroom. The Court further finds that the acts and behavior complained of were contemptuous and insulting acts in the immediate view and presence of the Court, which necessitated that the Court declare a mistrial, as the Court was unable to proceed with the trial of the case based on attorney Spruell's disruptive behavior.

"Direct summary criminal contempt which arises in the presence of the Court and tends to scandalize it and hinder or obstruct the orderly processes of the administration of justice, the preservation of order and decorum in the Court, etc., is exempt from the due process requirements of notice and hearing. *Spruell v. The State*, 148 Ga. App. 99 [250 SE2d 807] (1978). It is not an abuse of the trial court's discretion in refusing to allow a defendant a hearing under such circumstances. Such a refusal does not deprive appellant of his due process rights guaranteed by the State and Federal Constitutions. *Id.*, *Garland v. The State*, 99 Ga. App. 826 [110 SE2d 143] (1959).

"A trial judge may, for a direct criminal contempt committed in the presence of the Court, hold the offender in contempt without a hearing and impose punishment, acting on the trial judge's own knowledge of the facts. *Spruell v. The State*, 148 Ga. App. 99[, supra,] (1978).

"The Courts of this state have held that 'contempt may consist in manner and tone as well as by affirmative act of speech. A Court may be insulted by the most innocent words uttered in a peculiar manner or tone. Words used may or may not be contemptuous according to the manner in which they were spoken. The Court to which the language is addressed is necessarily, in such a case, the Judge in this respect, and its conclusion once formed is conclusive upon every other Court.' *Id.*

"The Court therefore finds that not only were attorney Spruell's actions and behavior in open Court in direct criminal contempt, but,

the Court also finds that the tone and demeanor and manner of attorney Spruell's addressing the Court, and attorney Spruell's actions of openly laughing at the Court, and glaring at the Court, leaning on the Court's bench in a threatening and menacing manner, refusing to be seated, also constitute a direct criminal contempt of court.

"The Court also finds that attorney Spruell was given an opportunity to address the Court, and to speak in his own behalf, but he chose to continue to laugh mockingly in the presence of the Court, turn his back on the Court, and continued to refuse to have a seat or respond to any of the Court's questions. *Dowdy v. Palmour*, 251 Ga. 135 [304 SE2d 52] (1983). Whereupon, attorney Billy L. Spruell was found in direct criminal contempt of Court, and he was summarily sentenced to twenty (20) days to serve in the DeKalb County Jail.

"The Court finds that even assuming arguendo that attorney Spruell's position was technically correct, protection of a client's rights is no excuse for contumacious conduct. *Farmer v. Strickland*, 652 F2d 427 (5th Cir. 1981), cert. denied, 455 U. S. 944, 102 S. Ct. 1440, 71 LEd2d 656 (1982).

"Once an objection has been made by an attorney and the court has made its considered ruling, subsequent contumacious conduct will not be excused merely for the fact that it was committed by an officer of the court during court proceedings in an attempt to protect the rights of the attorney's client. *Id.*

"BASED ON THE FOREGOING COMPLAINED OF ACTS OF ATTORNEY BILLY L. SPRUELL, THE COURT FINDS THAT ATTORNEY BILLY L. SPRUELL CONDUCTED HIMSELF IN A CONTEMPTUOUS AND INSULTING MANNER IN THE IMMEDIATE VIEW AND PRESENCE OF THE COURT, SUCH BEHAVIOR TOTALLY OBSTRUCTING THE ORDERLY ADMINISTRATION AND PROCEEDINGS OF THE COURT, NECESSITATING THE COURT TO DECLARE A MISTRIAL IN THE PROCEEDINGS. THE COURT FURTHER FINDS THAT ATTORNEY BILLY L. SPRUELL COMMITTED A DIRECT CRIMINAL CONTEMPT OF COURT AND SHALL BE SENTENCED TO SERVE TWENTY (20) DAYS IN THE DEKALB COUNTY JAIL.

"SO ORDERED THIS THE 25TH DAY OF SEPTEMBER, 1990, NUNC PRO TUNC TO SEPTEMBER 24, 1990."

*Held*:

1. Appellant's motion to strike from the record a two-page handwritten document, which is apparently a statement by a deputy who was involved in the courtroom incident, is denied. This document was filed subsequent to the trial court's order being appealed, and has not been introduced in evidence or served upon appellant. Nonetheless, the document's lack of evidentiary value does not compel that it be stricken from the record.

2. "During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his [or her] presence and observed by him [or her] to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing." *Dowdy v. Palmour*, 251 Ga., supra at 141-142 (2). " ' "It is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according, to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them." ' *White v. George*, 195 Ga. 465, 469-470 (24 SE2d 787) (1943)." *Smith v. Adams*, 161 Ga. App. 820 (1) (288 SE2d 775).

"[T]he standard of proof in criminal-contempt cases is the beyond-reasonable-doubt standard." *In re Crane*, 253 Ga. 667, 669 (2), 670 (324 SE2d 443). "[O]n appeal of a criminal contempt conviction the appropriate standard of appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Cits.]" *In re Irvin*, 254 Ga. 251, 256 (328 SE2d 215). It follows that the trial court's contempt order must be supported by the record on appeal and that the trial court is not authorized to base its finding of contempt on facts not in the record. *In re Bryant*, 188 Ga. App. 383, 384 (373 SE2d 74); *In re Hayes*, 185 Ga. App. 818, 819 (1) (366 SE2d 204); *In re Sykes*, 151 Ga. App. 233, 234 (2) (259 SE2d 215).

"The essential elements of criminal contempt of court have been 'variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court, but "it also includes the interruption of the proceedings. . . ." (Cit.)' *In re Bergin*, 178 Ga. App. 454, 455 (343 SE2d 743) (1986). Cases of contempt in facie curiae are distinguished from those involving out-of-court statements. A court's power to impose punishment for out-of-court statements is limited to those cases in which there is a 'clear and present danger to the administration of justice,' while the power to punish for in-court actions involves the inherent power of courts ' "to maintain order in

their courtrooms and to assure litigants a fair trial. . . ." (Cit.)' *Crudup v. State of Ga.*, 106 Ga. App. 833, 837 (129 SE2d 183) (1962). Since the occurrence we are reviewing took place in court, the maintenance of order standard applied." *In re Bryant*, 188 Ga. App. 383, 384-385 (2), supra.

A comparison of the record and the trial court's order shows that the record fails to support a significant portion of the findings of fact, as to appellant's conduct, which are stated as predicates for the finding of contempt. Some of the trial court's unsupported findings of fact are that appellant was glaring at the trial court in a menacing manner, appellant's refusal to lower his voice during bench conferences, and those refusals of appellant to take his seat at counsel table which preceded the trial court's initial announcement finding appellant to be in contempt of court. Furthermore, we find that the trial court's finding, that appellant refused to respond to the trial court's questions, is not only unsupported, but also clearly contradicted by the record. The record shows that appellant was adamantly asserting the position that the trial court had erred in its construction of the statutes governing the allocation of peremptory strikes of jurors. (Whether the appellant's position on that point of law was correct is irrelevant to the contempt conviction. *Farmer v. Strickland*, 652 F2d 427, 435, supra).

There is some suggestion on the record by the trial court that appellant was laughing at the court. However, we note that this statement, made after the trial court announced that it was holding appellant in contempt was immediately and vehemently denied by appellant. It also appears that after the contempt announcement, appellant failed to immediately take his seat when so directed, but instead attempted to respond to the trial court's finding of contempt and deny the trial court's statement that he was laughing. However, since these events followed the trial court's announcement of its decision to hold appellant in contempt and have not been made the basis of a separate second contempt judgment, this evidence offers no support to the finding of contempt being appealed.

Applying the proper standards to the facts shown by the record in the case sub judice, we conclude that the evidence was not sufficient for any rational trier of fact to find beyond a reasonable doubt that appellant was guilty of contempt. The trial court erred in holding appellant in contempt.

We also note that a review of the record in this case reveals that Spruell was not given an opportunity to speak in his own behalf as mandated by *Dowdy v. Palmour*, 251 Ga. 135, 142, supra. This amounts to a failure to extend to Spruell the minimum requirements of due process and provides a second basis for the reversal of the judgment of contempt. *Taylor v. Hayes*, 418 U. S. 488, 496-500 (II)

(94 SC 2697, 41 LE2d 897).

*Judgment reversed. Sognier, C. J., concurs. Andrews, J., concurs specially.*

ANDREWS, Judge, concurring specially.

While I concur fully with Division 1 of the majority, and the judgment rendered, I cannot fully concur that all that is said in Division 2 is necessary to the decision, and would rely solely on the following premise.

Attorney Billy L. Spruell appeals an order holding him in direct criminal contempt of court. Spruell was representing a client upon the trial of certain misdemeanor traffic offenses.

During jury selection there were several sharp exchanges between Spruell and the trial judge, which culminated in the judge holding Spruell in contempt, sentencing him to 20 days in jail and declaring a mistrial. The next day, a written order was entered finding the following behavior of Spruell contemptuous: "became belligerent"; "raised his voice at the Court"; "leaning on the Court's bench"; "glaring at the Court in a menacing manner"; "refused to have a seat at counsel table"; "began to openly laugh in presence of the Court in a derisive and mocking manner"; "waved his hands in the air"; "continued to laugh"; "turned his back on the Court"; "refused to respond to the Court's question"; "treated the Court with disrespect, ridicule and mockery."

"During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, *after affording the contemnor an opportunity to speak in his or her own behalf,* to announce punishment summarily and without further notice or hearing." (Emphasis supplied.) *Dowdy v. Palmour,* 251 Ga. 135, 141 (304 SE2d 52) (1983).

A review of the record in this case reveals that Spruell was not given an opportunity to speak in his own behalf as mandated by *Dowdy.* In addition to the due process implications of this requirement, it serves another essential purpose. "[T]he standard of proof in criminal-contempt cases is the beyond-reasonable-doubt standard." *In re Crane,* 253 Ga. 667, 670 (324 SE2d 443) (1985). "[O]n appeal of a criminal contempt conviction the appropriate standard of appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Cits.]" *In re Irvin,* 254 Ga. 251, 256 (328 SE2d 215) (1985). Thus, a practical problem is created where, as here, conduct is involved which

is not reflected on the trial transcript.[1] Given the state of the record in this case, no meaningful review may be had.

Accordingly, the judgment of contempt should be reversed and the case remanded to the trial court for a retrial in accordance with this opinion.[2]

DECIDED JUNE 27, 1991.

*Brian M. Dubuc, Steven H. Sadow,* for appellant.
*Billy L. Spruell,* pro se.
*Albert Sidney Johnson, Lisa A. Foster,* for appellee.

---

[1] "As a practical matter, notice in a summary proceeding amounts to a verbal recounting of the conduct the court experienced as offensive and interfering, followed by a challenge to show cause why the conduct should not be held contemptuous." Johnson and Reaves, "Contempt of Court in Georgia," 23 Georgia State Bar Journal 66 (1986).

[2] The procedural posture of the case on retrial will be different from the original proceeding. See *Dowdy,* supra.