## A94A1139. IN RE ADAMS.
### (450 SE2d 851)

BLACKBURN, Judge.

The appellant, Bentley C. Adams III, an attorney, appeals from a summary adjudication of direct criminal contempt on January 27, 1994, based upon his conduct in the presence of the trial court at the subject hearing and while representing Stephen Buice, in connection

with a DUI and related charges in the State Court of Rockdale County, in an unreported proceeding on January 6, 1994.

The accusation and the "Plea of Guilty: Acknowledgement and Waiver of Rights" forms executed by Buice, Adams, and Dabney Yarborough, the solicitor, reflect that during the January 6, 1994, unreported proceeding before the Honorable William F. Todd, Jr., Buice, through Adams, tendered a plea of guilty to leaving the scene of an accident, with first offender treatment requested, and a nolo contendere plea as to the DUI charge. The separate sentencing form, executed by Judge Todd reflects a guilty plea for Count 1 (DUI), a sentence of six months, with twenty-eight days to serve and the remainder on probation, and a $650 fine; a guilty plea with first offender treatment for Count 3 (leaving the scene of an accident), a sentence of twenty-eight days to serve, concurrent with Count 1, and a $200 fine; and a nolle prosequi order as to Counts 2 and 4.

After learning from the probation officer, following entry of the pleas herein, that there was a conflict between the entries on the plea form and the entries on the sentence form, Buice contacted Adams, who, after discussing the matter with the solicitor's office, sent a letter to Judge Todd on January 14, 1994, pointing out that Buice had tendered a plea of guilty to leaving the scene of an accident (with first offender treatment) and a plea for a nolo contendere as to the DUI charge. Adams advised Judge Todd that there appeared to be a clerical error present, but that the prosecuting attorney disagreed with his contentions. Adams enclosed a proposed order correcting the record to reflect the disposition of the DUI charge and asked the court to sign same.

A few days later, Adams received a letter, dated January 20, 1994, from Judge Todd's calendar clerk, notifying him to be in court on January 27, 1994, stating "Your presence [*Adams'*] is required for a hearing on the Motion to Correct Plea in the above-referenced case." No such motion had been filed by Adams and the court's letter contained no reference to a contempt proceeding.

The record before us contains a transcript of the January 27, 1994, hearing. The court, on its own motion, sequestered the witnesses defendant had brought to testify concerning the January 6, 1994, pleas. Adams informed the trial court that, based upon his understanding, the court had accepted his client's plea of nolo contendere to DUI at the January 6, 1994, call of the case.

The trial court, immediately thereafter, and without calling any witnesses, or introducing any evidence, stated: "Pursuant to the authority in O.C.G.A. 15-1-4 (a) (2), the court is finding you in criminal summary contempt of court. The court will sentence you at the conclusion of these proceedings."

The trial court later stated that, "Your statement to the Court at

the beginning of these proceedings put[s] you in direct criminal contempt of this court, and at that point the Court pronounced that you were in contempt of court and specifically stated the Code Section under 15-1-4, Subsection (a) (2), misbehavior of any officers of the Court in their official transaction, this being an official transaction. Your action constituted contemptuous conduct committed in the actual presence of the Court."

After finding Adams in contempt, the trial court proceeded to call witnesses for the court, including a deputy clerk, two bailiffs, and the county solicitor, all of whom were present at the January 6, 1994, hearing, and who testified that the trial judge had denied Buice's request to plead nolo contendere to the DUI charge. The deputy clerk testified that she did not hear the court specifically deny Buice's request to plead nolo contendere and that she had asked the trial judge if he had accepted the plea, and was informed that the request had been denied. One of the bailiffs testified that he had discussed the case with the trial judge on the morning of January 27, 1994, prior to the court-scheduled hearing.

In any event, the testimony of the State's witnesses was not considered by the trial court in arriving at its holding, as he had already held Adams in contempt at the time such testimony was given. "[S]ince these events followed the trial court's announcement of its decision to hold appellant in contempt . . . , this evidence offers no support to the finding of contempt being appealed." *In re Spruell*, 200 Ga. App. 218, 228 (407 SE2d 451) (1991).

The trial court denied both Adams' oral motion to recuse and his request for time to retain counsel to represent him in the contempt matter. The trial court then allowed Adams to call his sequestered witnesses, but only in mitigation of the contempt punishment. Adams called his witnesses, who were unaware of the nature of the hearing and who had not appeared for the limited purpose allowed by the court. James Rogers, an associate of Adams' law firm, Buice's father, and Buice, all testified that the trial judge had accepted Buice's nolo contendere plea to the DUI charge on January 6, 1994.

At the conclusion of the subject hearing, Adams was fined $500 and sentenced to serve 20 days in jail by the trial court. The trial court placed Adams immediately in police custody, denied his motion for supersedeas and denied him the opportunity to make a telephone call. This court granted the supersedeas motion pursuant to Court of Appeals Rule 50 (c), and Adams' sentence was stayed pending appellate review.

1. Adams asserts that the trial court erred in failing to recuse himself and in failing to grant appellant a hearing wherein he could be represented by counsel, with notice of the charges, before another judge, and in summarily holding him in contempt.

"On motion for disqualification it is the duty of the judge to pass only on the legal sufficiency of the facts alleged to ascertain whether they support a charge of bias or prejudice. Neither the truth of the allegations nor the good faith of the pleader may be questioned, regardless of the judge's personal knowledge to the contrary. The test is whether, assuming the truth of the facts alleged, a reasonable person would conclude that a personal as distinguished from a judicial bias exists." (Citations, punctuation and emphasis omitted.) *State v. Fleming*, 245 Ga. 700, 702 (267 SE2d 207) (1980). As we discuss infra, the trial judge's conduct in the present circumstances raises a strong inference that he had become personally embroiled in the controversy. For the reasons hereinafter outlined, this is not a proper case for summary contempt. Therefore, the trial judge's involvement in the controversy required that another judge conduct the hearing and that Adams' motion to recuse be granted. See *Dowdy v. Palmour*, 251 Ga. 135 (304 SE2d 52) (1983).

"*During trial*, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. . . . [However,] [w]here the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such [a] manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge." (Emphasis supplied.) *Dowdy v. Palmour*, supra at 141-142.

Implicit within the definition of direct, summary contempt is a finding that the conduct is in the presence of the trial court and results in an interference with the court's ability to administer justice. *Garland v. State*, 253 Ga. 789 (325 SE2d 131) (1985). See also Judge Edward H. Johnson and Richard D. Reaves, Contempt of Court in Georgia, 23 Ga. State Bar Journal 66 (Nov. 1986).

While the trial court indicates that Adams' conduct at the January 27, 1994, hearing was contemptuous, such contention is disputed by the record. A review of the record reveals that it was the court which scheduled the January 27, 1994, hearing, and had Adams repeat his previous written request to have the court correct the sentence entered by the court on January 6, 1994.

Adams' letter to the trial court did not interfere with the court's ability to administer justice, but simply gave the court notice of a potential error. Thereafter, the court had the authority to determine if an error had occurred.

Adams had both the right and the duty to seek to correct what he contended was an error on the part of the court in the execution of the sentence in the subject case. His conduct in connection with such correction was appropriate and respectful and could not support a finding of direct, summary, criminal contempt based upon his conduct at the January 27, 1994, hearing.

"An attorney may not be held in contempt of court merely for presenting in good faith a motion which he has a right to make, nor may an attorney be held in contempt merely because, having filed such a motion, he fails to prevail on it. [Cit.]" *In re McLarty*, 152 Ga. App. 399 (263 SE2d 194) (1979).

It is clear that the trial court, in fact, found Adams in contempt for his alleged fraudulent modification of the *accusation* form on January 6, 1994, at the unreported calendar call. Based upon his memory and notes made contemporaneously at the January 6, 1994, hearing, the trial judge found that Adams' "conduct [as] an officer of the court [was] contemptuous in nature, it [was] a fraud perpetrated upon the Court, and, [the trial court stated] Mr. Adams, you are not going to get away with it." The trial court noted that Buice's request to plead nolo contendere to DUI had been denied by him at an earlier, unreported pre-trial conference on December 21, 1993.

The trial court made the summary contempt finding without providing Adams with notice of such intent at the time the court scheduled the hearing thereon, and without providing him with an opportunity to be heard, or to be represented by counsel, before summarily finding Adams in "criminal summary contempt of court."

The trial court's finding of direct, summary criminal contempt on January 27, 1994, was based solely upon the events of January 6, 1994. Here, there existed no necessity to eliminate an interference with an on-going trial and no other justification for imposing immediate, summary contempt with the attendant sacrifice of usual due process protections.

There was no necessity for the imposition of summary punishment, herein involved, " ' "to preserve order and enable (the court) to proceed with its business." (Cit.)' [Cit.]" *McDaniel v. State*, 202 Ga. App. 409, 413 (414 SE2d 536) (1992). There was no justification for " 'dispensing with the ordinary rudiments of due process.' " *Thomas v. State*, 174 Ga. App. 476, 478 (330 SE2d 412) (1985). Adams was denied the minimum requirements of due process, and his conviction for contempt must be reversed.

Inasmuch as nothing happened on January 27, 1994, prior to the trial court holding Adams in contempt, it is clear that the trial court, upon receipt of Adams' letter concerning the sentence, planned to hold Adams in contempt and scheduled the January 27, 1994, hearing without notice of its purpose to Adams. The conduct of the trial

judge, coupled with the imposition of the maximum sentence, his insistence upon immediate incarceration and his denial of supersedeas and a telephone call to an officer of the court who was present on behalf of his client, raises a strong inference that the trial judge had become personally embroiled in the controversy and that it should have been heard by another judge. This is especially true where there is no record of the subject proceeding and the judge is, in fact, the prosecuting witness. It is difficult to maintain the objectivity required of a fair and impartial judge, when you are deciding whether it is your version or the defendant's that is correct.

Procedurally, Adams should have been cited for contempt by the trial court, provided with notice of a hearing thereon before another judge who was not involved in the controversy and whose testimony would not be necessary to the State's case, and provided with an opportunity to be represented by counsel and to call witnesses on his behalf. See *Dowdy*, supra; *Thomas*, supra.

2. Adams further argues that the trial court erred in finding him in contempt as the evidence does not support the finding of contempt beyond a reasonable doubt.

The trial court's factual conclusion was that Adams had wrongfully modified defendant's *accusation* form on January 6, 1994. The trial court did not contend that the "Plea of Guilty: Acknowledgement and Waiver of Rights" form, which had been tendered by Adams prior to being handed the accusation, had been altered in any way by Adams. The plea form supports Adams' contentions and is signed by the prosecuting attorney. The trial court *never reviewed the defendant's tendered plea document prior to "accepting" defendant's plea and entering sentence* on a separate form.

The alteration of which the trial court complains was on the accusation, which originally showed "Guilty to Ct 1 [D.U.I.], Nolo Contendere to Ct 3 [Leaving the scene]." The accusation was clearly in error in its original form, as there would have been no reason to have a nolo contendere plea on Count 3 when first offender treatment had been granted. It appears that the accusation was changed to read "Nolo Contendere to Ct 1 [D.U.I.]" and "Guilty to Ct 3 [Leaving the scene]" which made it consistent with the previously entered "Plea of Guilty: Acknowledgement and Waiver of Rights" form, which the prosecuting attorney had signed and *the trial judge never reviewed.* The trial judge *never reviewed the accusation form when returned by Adams prior to entering sentence* on a separate form.

From the record before us, it appears that any variation between the plea entered and the finding upon which sentence was imposed, resulted largely from the trial court's failure to review the defendant's plea as entered, prior to imposing sentence, and from the multiple forms and convoluted process employed by the court in the handling

of this matter. Viewing the evidence in the light most favorable to the prosecution, it is insufficient to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *In re Irvin*, 254 Ga. 251, 256 (328 SE2d 215) (1985); *In re Crane*, 253 Ga. 667, 669-670 (324 SE2d 443) (1985); *In re Spruell*, supra.

*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 29, 1994.

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, James D. Rogers, W. Bruce Maloy,* for appellant.

*Bentley C. Adams III,* pro se.

*Cheryl F. Custer, District Attorney, Michael J. Bowers, Attorney General, Daryl A. Robinson, Senior Assistant Attorney General, Neal B. Childers, Assistant Attorney General,* for appellee.