## A03A0916. In re BURGAR.
(589 SE2d 679)

BLACKBURN, Presiding Judge.

Marko L. Burgar appeals the judgment of contempt entered against him, arguing that the trial judge erred (1) in refusing to recuse himself, and (2) in finding him in contempt of court. For the reasons set forth below, we reverse.

This case arises out of the prosecution in the City Court of Atlanta of improper passing traffic offenses against two individuals which resulted in an accident. The trial court held the prosecutor, Burgar, in contempt for his handling of the case when it was called for trial on December 20, 2001. It appears that the State could not make its case against either defendant without the testimony of the other. Burgar had a pre-trial discussion with the defendants, who were not represented by counsel, concerning their rights in regard to testifying in the cases, and concluded that the defendants did not wish to testify. Burgar felt that the defendants had a Fifth Amendment right not to testify to an incident in which they were themselves charged. In the exercise of his prosecutorial discretion, Burgar decided to seek to dismiss or nolle prosse the cases.[1] The trial court had apparently overheard part of that conversation, called Burgar to task, advised him that he was wrong as to the law, and decided to go forward with the prosecution of the cases.

The trial court then addressed the two defendants and advised them that: "You are obligated as a witness to the accident to testify to what you claim or what you saw the other person had done. If you do not wish to do so, I will find it necessary to hold you in contempt of court." The trial judge asked each defendant if he understood what he had said and inquired if they then wished to testify. Each responded "Yes."

Neither of the defendants was represented by counsel, the trial judge did not advise the defendants of their right to counsel, and the record includes no waiver of such right. The trial judge then asked Burgar if he still did not wish to prosecute the cases. Burgar then politely advised the court that: "Your Honor, given their initial statements, the State does not feel comfortable prosecuting it. At this moment, we'll move to [nolle prosse]." It is refreshing to see a prosecutor trying to ensure that the unrepresented defendants' rights were protected, as he understood those rights, rather than simply trying to chalk up an easy win. Such wins are rarely appealed because of cost and other factors. This attitude speaks well for the

---

[1] We note that when the cases were ultimately tried before another judge on January 22, 2002, the defendants were found "Not Guilty," based upon the invocation of their Fifth Amendment rights.

professionalism of the Solicitor-General's Office of the City Court of Atlanta. The trial judge refused to nolle prosse the cases and advised that he would schedule a show cause hearing as to why Burgar should not be held in contempt.

At this point the trial judge instructed the defendants: "Gentlemen, raise your hands. Do you solemnly swear," whereupon Burgar asked the court for permission to add one last thing to the record, which the court allowed. Burgar advised the trial judge that the City would object to any further proceedings in the matter. The trial judge advised Burgar that: "Sir, you don't have to do it. I'm going to handle my calendar for the rest of the day. You may leave the courtroom."

Burgar advised the trial judge that he did not think it would be proper for the court to proceed without the representation of the City, as it is a party to the actions. The trial judge responded: "Not if I say you are not today. You are out of this courtroom, sir." Burgar withdrew from the courtroom after obtaining the court's permission to find someone to replace him. Nothing in the record reflects anything but a respectful attitude by Burgar to the court, in tone and message. The case was ultimately continued to another day.

After denying Burgar's motion to recuse, the trial judge held a show cause hearing on April 12, 2002. The court found Burgar in contempt of court and fined him $300 in its order, dated October 22, 2002. This appeal followed.

We note that:

> Acts of contempt are neither civil nor criminal. They are either direct, meaning they are committed within the sensory perception of the judge, or they are indirect, meaning they occur outside the sensory perception of the judge. Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed "criminal" contempt or "civil" contempt, a distinction historically made by both appellate courts in this state. The distinction between the two is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order.

(Citations and punctuation omitted.) *Grantham v. Universal Tax Systems.*[2]

In this case, the trial court imposed a fine of $300 for contempt

---

[2] *Grantham v. Universal Tax Systems*, 217 Ga. App. 676, 677-678 (2) (458 SE2d 870) (1995).

which had already occurred and could not be remedied. By imposing this fine, "the trial court necessarily determined that the acts of contempt occurring prior to its order were to be treated as criminal contempt." *Gratham*, supra at 678 (2). "In order to establish criminal contempt, there must be proof beyond a reasonable doubt not only that the alleged contemnor violated a court order, but also that he did so wilfully." *Thomas v. Dept. of Human Resources*.[3]

Burgar maintains that the trial judge erred in refusing to recuse himself in the contempt hearing, as he was the primary witness against Burgar. We agree, as one cannot be both the prosecuting witness and the judge in our judicial system.

> During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. However, where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such a manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge.

(Punctuation and emphasis omitted.) *In re Adams*.[4]

In this case, the allegedly contumacious conduct of Burgar was directed toward the trial judge, but the trial court did not make a summary finding of contempt. Instead, the announcement of punishment was delayed until after the trial judge conducted a hearing on the charge of contempt. Under these circumstances, due process required that Burgar's contempt hearing be conducted by another judge who was not involved in the controversy and whose testimony would not be necessary to the State's case. *Dowdy v. Palmour*;[5] *In re Adams*, supra. Under the above holdings, we are required to reverse the finding of contempt.

Further, we can find no evidence in the record to support a finding of contempt against Burgar in meeting his responsibilities as a prosecutor in this matter. He was courteous and professional at all

---

[3] *Thomas v. Dept. of Human Resources*, 228 Ga. App. 518, 519 (492 SE2d 288) (1997).
[4] *In re Adams*, 215 Ga. App. 372, 375 (1) (450 SE2d 851) (1994).
[5] *Dowdy v. Palmour*, 251 Ga. 135, 142 (304 SE2d 52) (1983).

times in the handling of the subject cases. The trial judge and the prosecutor have separate and distinct roles in our criminal justice system, and it is not contemptuous per se for a prosecutor to meet his responsibilities as he sees them, absent contumacious conduct or refusal to follow a direct order of the court, neither of which occurred here.

*Judgment reversed. Ellington and Phipps, JJ., concur in the judgment only.*

DECIDED NOVEMBER 13, 2003.

*Joseph J. Drolet, Solicitor-General, Katherine Diamandis, Assistant Solicitor-General*, for appellant.
*Herman Pierre, Jr.*, pro se.