A05A0081. IN RE SCHOOLCRAFT.
(617 SE2d 241)

ADAMS, Judge.

Stanley W. Schoolcraft III appeals the trial court's order finding him in criminal contempt. We reverse.

Schoolcraft's contempt citation arose in the context of two bond hearings he handled on behalf of his client Mackell Ware. Ware was indicted along with another co-defendant in connection with the armed robbery and aggravated assault of a pizza delivery man. Other alleged participants in this incident were charged separately in juvenile court. The first of the two bond hearings occurred on December 2, 2003. At that hearing, the state argued that Ware was the individual who "actually hit [the victim] over the head with a metal object causing severe injury." Schoolcraft responded to this allegation by stating that Ware did not hit the victim over the head, despite the fact that the warrant alleged that he did. Nevertheless, the trial judge denied Ware's request for bond at this first hearing.

Schoolcraft was present when Ware subsequently testified in a juvenile court proceeding regarding the robbery and assault. At the hearing, another individual was identified as the man who struck the

---

victim in the head with the metal pipe. Ware admitted, however, that he struck the victim in the back with the pipe. Another individual then took the pipe from Ware, chased the victim down, and along with a third individual, assaulted the victim by beating him in the head, resulting in severe injuries.

On January 14, 2004, the trial court held a re-hearing on the denial of Ware's bond. At that hearing, the trial court noted that the issue at the prior bond hearing was whether "as alleged in the warrant," Ware had been the individual who struck the victim with the metal pipe. After acknowledging Ware's participation in the juvenile court hearing, the trial court asked whether the individual who wielded the pipe had been identified at the hearing. Schoolcraft replied that he had been identified. The trial judge then asked, "Was it not your client?" Schoolcraft replied, "It was not my client." The trial court then granted Ware a $50,000 bond.

The trial judge later became aware that Ware had admitted in juvenile court that he had hit the victim with a metal pipe. The judge concluded that Schoolcraft's response to his question at the January 14, 2004 hearing had been false and issued a citation for contempt against Schoolcraft, which included notice of a scheduled rule nisi hearing on the matter.

The trial judge presided over the subsequent hearing in which Schoolcraft admitted that the information he provided the court was incorrect. He apologized, stating that it was "never my intent to mislead the court." He said that his client had "maintained all along" that he hit the victim once in the back. But Schoolcraft explained that he thought the court's question referred to the individual who wielded the pipe to inflict the beating that resulted in the victim's injuries. In other words, he thought the judge was referring to the injuries to the victim's head as referenced in the warrant. He stated, "When you asked me the question, I thought you were asking me in the context of the beating and the injury to the pizza man, and I apologize, it was just a mistake on my part."

In response, the judge expressed concern that his order on the bond was based upon false information in reliance upon Schoolcraft's answer:

> When I asked you if your client was the one who wielded the metal pipe, the answer should have been, yes, but he did not participate in the beating that caused the injury to the victim, he simply struck him one time in the back. That's what came out of the juvenile court proceedings. That's not the answer I got. I probably would have granted the same bond but I'd have done it on correct information, not on false information.

The trial judge further stated that he did not think that his question had been unclear; the problem was that Schoolcraft did not listen to the question. The court thus noted that this was "a contempt of court that could have been avoided."

The judge found Schoolcraft in contempt, sentencing him to 48 hours in jail and 40 hours of community service. He also ordered that Schoolcraft's name be stricken from the county's appointed counsel list until the end of the year, a period in excess of eight months.

1. Schoolcraft asserts that he was denied due process because the trial judge did not recuse himself from the rule nisi hearing.

In order to maintain order in his courtroom, a trial judge has the power to issue an order of contempt for conduct conducted in his presence and after affording the contemnor an opportunity to be heard, to determine punishment summarily without further proceedings. *In re Adams*, 215 Ga. App. 372, 375 (1) (450 SE2d 851) (1994). But where, as here, the trial court delays the announcement of punishment, further procedural safeguards must be applied, including the requirement that another, noninterested judge conduct the contempt hearing:

> [W]here the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such a manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, *including the attorney's opportunity to be heard*, must be conducted by another judge.

(Punctuation omitted; emphasis supplied.) Id., citing *Dowdy v. Palmour*, 251 Ga. 135, 141-142 (2) (d) (304 SE2d 52) (1983).

Here, there is no question that the allegedly contumacious conduct was directed toward the judge, as it occurred in direct response to the judge's question. In addition, we note that the transcript of the colloquy between the trial judge and the attorneys at the contempt hearing, at the very least, raises an inference that the trial judge had become involved in the controversy as he necessarily applied his impressions from the prior bond hearings in reaching his finding of contempt. While Schoolcraft admitted the key issue — that his response to the judge's question was incorrect — he explained that his answer was based upon his misunderstanding of the question. The trial judge, however, did not think that his question could have been misinterpreted. As this Court has previously noted, "It is difficult to maintain the objectivity required of a fair and impartial judge, when you are deciding whether it is your version or the defendant's that is correct." *Adams*, 215 Ga. App. at 377 (1).

And because this was not an instance of a direct, summary adjudication of contempt, the minimum requirements of due process required that Schoolcraft be "cited for contempt by the trial court, provided with notice of a hearing thereon before another judge who was not involved in the controversy and whose testimony would not be necessary to the State's case, and provided with an opportunity to be represented by counsel and to call witnesses on his behalf." *Adams*, 215 Ga. App. at 377 (1). The trial judge properly issued a citation for contempt, scheduled a hearing on the issue, and provided an opportunity for Schoolcraft to be heard. But we find that the judge erred in conducting the subsequent hearing himself. Rather, Schoolcraft is entitled to a hearing conducted before another judge, *Dowdy*, 251 Ga. at 142 (2), and we are therefore constrained to reverse the trial court's finding of contempt. *In re Burgar*, 264 Ga. App. 92, 94 (589 SE2d 679) (2003). Compare *In re Phillips*, 225 Ga. App. 478 (484 SE2d 254) (1997) (not applying the *Adams* or *Dowdy* factors).

We find no merit to the state's argument that no hearing actually occurred in this case because Schoolcraft simply admitted that he had provided the court with false information. To the contrary, the rule nisi hearing was Schoolcraft's "opportunity to be heard," and that opportunity should have occurred before a judge who was not involved in the prior proceedings. *Adams*, 215 Ga. App. at 375 (1). Indeed, in addition to apologizing to the court for his incorrect answer, Schoolcraft attempted to explain the basis for his answer, and he was entitled to an impartial consideration of his explanation.

2. Schoolcraft also asserts that the record fails to establish beyond a reasonable doubt that his conduct was wilful and interfered with the orderly administration of justice as required for a conviction of criminal contempt. We address this argument despite our holding above that the matter should have been heard by another judge, because no additional hearing can occur if we find that the record fails to establish any basis for a finding of contempt.

In reviewing the trial court's citation of criminal contempt, we view the evidence in the light most favorable to support the verdict and determine if any rational trier of fact could have found School-craft guilty beyond a reasonable doubt. *In re Herring*, 268 Ga. App. 390 (1) (601 SE2d 839) (2004). "Criminal contempt involves some form of wilful disrespect toward the court; it may involve intentional disregard for or disobedience of an order or command of the court, or it may involve conduct which interferes with the court's ability to administer justice." (Citation omitted.) *In re Spruell*, 227 Ga. App. 324, 325 (1) (489 SE2d 48) (1997).

Here, Schoolcraft admitted at the rule nisi hearing that he responded to the trial court incorrectly, but denied that he did so intentionally. Schoolcraft argues that the trial court subsequently

found that his behavior was unintentional. The court's written contempt order provides, "The Court informed Mr. Schoolcraft of the charge against him to wit he admitted having misled the Court albeit unintentionally." But we read this statement as containing an obvious typographical error. The charge against Schoolcraft was misleading the court; Schoolcraft's admission came in response. The order may be more properly read as stating that the court informed Schoolcraft of the charge "*to which* he admitted having misled the Court albeit unintentionally." Thus, the trial court merely recited Schoolcraft's position, and did not enter a finding that he acted unintentionally.

As the underlying facts are undisputed, this case turns in large part upon a determination of whether Schoolcraft's explanation is credible. Questions of credibility are the exclusive province of the trial court as factfinder, and this Court cannot second-guess a trial court's findings on matters of credibility or demeanor. *Herring*, 268 Ga. App. at 391 (2); *In re Waitz*, 255 Ga. App. 841, 843-844 (567 SE2d 87) (2002). A trial court as factfinder is not required to accept a witness's explanation for his conduct. In the proceeding below, the trial judge, in fact, did not believe that his question was subject to misinterpretation and could have rejected Schoolcraft's explanation on that basis. Accordingly, we find that the record in this matter is sufficient to present a question for the factfinder as to whether Schoolcraft's conduct was wilful.

Schoolcraft also argues that the evidence failed to support a finding that his conduct interfered with the court's ability to administer justice. He notes that the trial judge stated at the rule nisi hearing that he "probably would have granted the same bond but I'd have done it on correct information, not on false information." We find that this offhand statement does not preclude a determination that misrepresenting a crucial fact to the court could interfere with the orderly administration of justice. "[A] court must be given room to act when faced with conduct which evinces resistance to authority and interferes with the ability of the court, in its broad institutional sense, to administer justice." *Spruell*, 227 Ga. App. at 325 (1).

Accordingly, we cannot say that the record precludes a finding of contempt against Schoolcraft.

3. To the extent that the issue may arise in any further hearing in this matter, we will address Schoolcraft's argument that the trial court lacked the authority to remove him from the court's appointed counsel list, as this penalty exceeded the statutory penalty for contempt. Under OCGA § 15-6-8 (5), superior courts have the authority to "punish contempt by fines not exceeding $500.00 and by imprisonment not exceeding 20 days." Schoolcraft asserts that the

trial court erred in imposing the additional sanction of barring him from the appointed counsel list. We disagree.

As the state notes, the trial court has the inherent power "to prescribe the manner in which the business of the court shall be conducted." (Citations omitted.) *Butler v. State*, 172 Ga. App. 405, 406 (1) (323 SE2d 628) (1984). See also OCGA § 15-1-3 (4); *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 595 (8) (533 SE2d 136) (2000). This power arises separately from that authorized by OCGA § 15-6-8 (5), and we will not interfere with a court's discretion in this regard unless it has been manifestly abused. *Perimeter Realty*, 243 Ga. App. at 595 (8). We note that the sanction at issue here did not impose either a fine or imprisonment in excess of that authorized by OCGA § 15-6-8 (5), but rather simply addressed the administration of the court's business. Under these circumstances, the trial court acted within its discretion and we find no error. Compare *Lee v. Environmental Pest & Termite Control*, 243 Ga. App. 263, 264-265 (3) (533 SE2d 116) (2000).

4. Given our holdings above, we need not reach Schoolcraft's remaining enumerations of error.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 11, 2005.

*L. David Wolfe, Kathryn A. Westberry*, for appellant.

*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Assistant District Attorney, Patrick D. Jaugstetter*, for appellee.

