**FIRST DIVISION**
**BARNES, P. J.,**
**PIPKIN, J., and PHIPPS, SENIOR APPELLATE JUDGE.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 27, 2021**

# In the Court of Appeals of Georgia

A20A1828. IN RE LIGHTFOOT.

PHIPPS, Senior Appellate Judge.

Clarissa Lightfoot appeals from an order holding her in contempt of court. Lightfoot contends that her conduct was not contemptible, that the evidence was insufficient to sustain the trial court's contempt finding, and that the trial court did not use the proper burden of proof. For the following reasons, we reverse.

"On appeal of a criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Murphy v. Murphy*, 330 Ga. App. 169, 176 (6) (a) (ii) (767 SE2d 789) (2014) (citation and punctuation omitted).

Viewed in that light, the record shows that Lightfoot, a public defender, was representing a client in the State Court of Fulton County in October 2019. When Lightfoot was cross-examining the officer who made the decision to arrest her client, Lightfoot asked the officer about a bodycam video and moved to enter the bodycam video into evidence. The trial court asked whether there was an objection from the State. The solicitor responded, "Foundation." The trial court sustained the objection.

Lightfoot began to ask questions about whether the officer was able to identify the video. The officer testified that he recognized the video as being a bodycam video of the scene. When Lightfoot asked if the video was a fair and accurate depiction of what he had submitted to the custodian of records, he responded, "I'm not sure if that's my bodycam video but that is a bodycam video." When Lightfoot asked the officer what the date was on the bodycam, the State objected without specifying a basis, and the trial court sustained the objection. After the officer testified that he was not 100 percent certain whether the bodycam video in question was his because there were several officers on the scene, the trial court stated that Lightfoot's question had been "asked and answered" and told Lightfoot to move on. Lightfoot requested that the officer be allowed to view the bodycam video to validate that it was his. The trial court denied her request. After the officer testified that he reviewed his bodycam

2

video two days earlier in preparation for his testimony, Lightfoot continued her cross-examination:

> Q: Isn't it correct that during your investigation – while on scene during the first ten minutes of your investigation, you learned that the shots were fired in the air?
> A: That's correct.
> Q: Officer, you were involved – Isn't it correct that you were involved, and you are involved, it making the decision on what [the defendant's] charge is?
> A: Yes, ma'am. I mean, I'm the one that made the charges, yes, ma'am.
> Q: Isn't it correct that you charged [the defendant] with reckless conduct?
> A: Yes, ma'am.
> Q: Isn't it correct that you charged [the defendant] with pointing a firearm at another?
> A: Yes, ma'am.
> Q: Isn't it correct that your charge of reckless conduct – I'm sorry, your charge of pointing a firearm at another was based on, what you stated, [a witness] stating that she pointed the firearm, and by she I mean [the defendant], at him?
> A: Yes.
> Q: Isn't it correct that your charge of pointing a firearm at another was not based on [the defendant] pointing a firearm at another civilian or citizen?
> A: That's correct.

Q: Isn't it correct that within 14 minutes and 17 seconds of your investigation of [the defendant], isn't it correct that at that time her only charge was reckless conduct?

A: Yes, that's correct.

Q: Isn't it correct that at 14 minutes and 17 seconds that at this point you had no additional evidence to charge [the defendant] with pointing a gun at another?

A: At that time I had no other charges other than the reckless conduct.

Q: Isn't it correct that at 16 minutes and 16 seconds that you had a conversation with [the defendant] --

THE STATE: Your Honor, I'm going to object to foundation. She's trying to bring in something that's not in evidence.

The trial court directed counsel to approach the bench and then excused the jury. The bench conference was not recorded. After the bench conference, the trial court made an announcement:

COURT: Please be seated, everyone. I'm going to have Ms. Lightfoot back to her table, and we're going to be clear on what's going on here now. There has been an objection made by the State that Ms. Lightfoot is giving specific minute and second times for the officer's actions based on the video, which is not in evidence, and that she is saying these specific minute and times as a way to narrate the video that is not in evidence. That is the State's objection. Ms. Lightfoot has indicated that this information comes from several sources – the specific minute and second chronological demarcations come from several sources, not including the video.

LIGHTFOOT: That's not my statement, Your Honor.

COURT: Please clarify what your statement is.

LIGHTFOOT: My statement, Your Honor, is that the information has come from several resources through the investigation.

COURT: And I asked specifically if those resources included the video, and you said they came from several sources.

LIGHTFOOT: Yes, Your Honor. I misunderstood your question.

COURT: All right. So I would like you now to show me the sources – well, first of all, let's have the State, if they can, tell me what they know about why they think this comes from the video. Ms. Janssen?

THE STATE: Well, we're asking for a good-faith basis, Your Honor, because every single thing – she's not been allowed to put the video in. So in order to backdoor it, going by specific seconds, we know actually from what we've seen is that there wasn't – the Defendant didn't have a watch. She was cuffed, etcetera. So there isn't another source for narrating her questions in such a way that there is a breakdown of a video that's not before the Court in evidence.

COURT: Okay. So, Ms. Lightfoot, now is your opportunity to show me the other sources that you're relying on other than the video.

LIGHTFOOT: Your Honor, we have no representations for the Court right now, and we would move for a mistrial.

COURT: We're going to take things one at a time. So you have – Please be seated. You have no other information? You just told me here at the bench that you had other sources.

LIGHTFOOT: Yes, Your Honor. Based on us being in trial right now and having the documents ready for trial and not being able or allowed to go and pull together all the resources that the Defense has used to

5

investigate this case at this moment and present it to the Court in an effective and persuasive and legally-efficient manner, Your Honor, our position at this point is that we have no representations to the Court.

COURT: You've made a representation to the Court already, Ms. Lightfoot. You told me that you had other sources.

LIGHTFOOT: Yes, Your Honor.

COURT: I'm going to give a 30-minute recess to you to go find the other sources that you've told me that you have.

LIGHTFOOT: And, Your Honor, we're going to note that 30 minutes will be insufficient for the Defense to pull together all of the investigation and resources that we have been doing to investigate this case over the last three, four weeks that this case has been posted for trial.

COURT: Ms. Lightfoot, I want to be very clear what I'm asking you for. I'm asking you for – you to produce the other sources that you said you were relying on when you were making your narration based on specific minutes and seconds.

LIGHTFOOT: Your Honor, we –

COURT: That's what I'm – I'm clarifying. I'm not talking – I'm not asking for anything other than that. I'm going to take a recess for that purpose, for you to collect those things. If 30 minutes is not sufficient, how much time do you feel you need, Ms. Lightfoot?

LIGHTFOOT: Your Honor, we would not give the Court a specific amount of time because we do not want to give the Court a specific amount of time.

COURT: Ms. Lightfoot, I've asked you to give me a specific amount of time.

6

LIGHTFOOT: Four hours, Your Honor.

COURT: Four hours? You'd like a four-hour recess? That would be until 3:20 this afternoon just to tell me – just to show me what you just mentioned at the bench that you have and you're relying on?

LIGHTFOOT: Your Honor, that is our estimation, but we still would not be able to state for the record certainly that we would be able to come give the Court all those resources.

COURT: Okay. Again, I find that four hours to produce what you have told me at the bench that you have and that – you told me at the bench that you have these other resources. You told me at the bench that you were relying on these other resources. I'm now asking you to show me what they are, and you are unable to show me. I'm giving you a reasonable amount of time, 30 minutes, to show me. I find that four hours would be unreasonable. I'm going to take a 30-minute recess. Thank you.

After the 30-minute recess, the trial court noted that during the bench conference, the State asked what the good-faith basis was for the minute and second references in Lightfoot's cross-examination, and that Lightfoot stated she had multiple sources of what the minute and second references came from. The trial court then asked Lightfoot what those other sources were. Lightfoot responded that the other sources were privileged. The trial court sustained the State's objection to Lightfoot making any further references in her questioning to specific minute and second chronology.

7

The trial court also ruled that it would instruct the jury to disregard any witness testimony based on specific minute and second references.

The trial court then addressed Lightfoot's representations that she had additional sources:

> COURT: Ms. Lightfoot, I advised you here at the bench that you would need to be candid with the Court as an officer of the Court, and you told me at that time that you had additional sources for the chronology. You are not producing that for me now. You told me you would, and now you tell me you do not have that information present.
>
> LIGHTFOOT: Your Honor, to be specific with the Defense's statement, the Defense said that the Defense did think that it would be unable to produce within 30 minutes the specifics of the investigation and how it received the information for specific questions within the time frame that was allotted to the Defense.
>
> COURT: I'm going to stop you there and just say – well, I think you've said your peace, so I'm not stopping you. I've heard you fully. I want to make clear that this is no longer about the Defense. This is about you and your statements as an officer of the Bar – an officer of the Court, a member of the Bar, to the Court and your individual duty of candor with the tribunal. You have mentioned privilege generally and cited that that is what prevents you from sharing the additional information that I've asked for. The jury is not present. Your client will not be prejudiced in front of the jury. I'm pointing that out. Can you at least articulate which privileges specifically you are relying on?
>
> LIGHTFOOT: Your Honor, I –

8

COURT: You, personally.

LIGHTFOOT: Yes, Your Honor. Thank you. I have not had the opportunity within 30 minutes to specifically iterate to the Court exactly which privileges. I am aware vaguely of some privileges that would apply in this case. But as I am not specific enough – I have not had enough time to do enough research specifically to all the issues today. I would not present to the Court any vague answers that would not be specific enough for my position.

COURT: All right. Thirty minutes ago we had a bench conference and you made representations. You, personally and individually, made representations to the Court that you had other sources. At that time we were not talking about privileges and you did not mention privileges. I asked you an evidentiary question about the basis for your representation to the Court.

LIGHTFOOT: Yes, Your Honor.

COURT: I'm just stating for the record what has happened. That was 30 minutes ago, and I'm leaving it at that. Because you are not able to support what you told me 30 minutes ago, you couldn't support it then when I asked you the question and you can't support it now, 30 minutes later, and you cannot even articulate what privilege you are asserting, I do find, Ms. Lightfoot, that you are in contempt of Court. This is all something that is taking place outside the presence of the jury. It does not influence the conduct of this case. I am imposing a penalty of a thousand dollar fine. We will now proceed with the trial of the case.

In a written order, the trial court found that Lightfoot's refusal to identify the "multiple sources," after having been afforded a recess of 30 minutes to respond to

9

the State's objection, constituted misbehavior that unnecessarily delayed the trial and obstructed the administration of justice, and that Lightfoot's multiple misrepresentations constituted direct contempt in violation of OCGA § 15-1-4 (a) (1). Lightfoot appeals.

1. Lightfoot contends that her conduct was not contemptible when evaluated in light of the factors enumerated in *In re Jefferson*, 283 Ga. 216 (657 SE2d 830) (2008). We agree.

OCGA § 15-1-4 (a) (1) provides, in relevant part: "The powers of the several courts to . . . inflict summary punishment for contempt of court shall extend only to cases of [m]isbehavior of any person or persons in the presence of such courts or so near thereto as to obstruct the administration of justice[.]" "Contempt of court, in its broad sense, means disregard for or disobedience of the order or command of the court; this also includes the interruption of court proceedings." *In re Williams*, 347 Ga. App. 189, 189-190 (818 SE2d 260) (2018) (citations and punctuation omitted). "Criminal contempt involves some form of wilful disrespect toward the court; it may involve intentional disregard for or disobedience of an order or command of the court, or it may involve conduct which interferes with the court's ability to administer justice." *In re Schoolcraft*, 274 Ga. App. 271, 274 (2) (617 SE2d 241) (2005) (citation

10

and punctuation omitted). "Direct, criminal contempt of court occurs where the contemptuous conduct takes place in the court's presence." *Hillman v. ALDI, Inc.*, 349 Ga. App. 432, 444 (5) (825 SE2d 870) (2019).

> If the contempt is direct, a trial court has the power, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. This summary power is authorized where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court.

*Ramirez v. State*, 279 Ga. 13, 14 (2) (608 SE2d 645) (2005) (citations and punctuation omitted).

As our Supreme Court noted in *Jefferson*, "criminal contempt is a crime in the ordinary sense. Like all crimes, contempt has an act requirement (actus reus) and a mental component (mens rea)." 283 Ga. at 218 (citations and punctuation omitted). To satisfy the act requirement, proof must show the act constituted an imminent threat to the administration of justice. Id. at 219. To satisfy the intent element, the Supreme Court adopted

> a more objective formulation of intent, whereby contempt may be found only where the attorney knows or reasonably should be aware in view of all the circumstances, especially the heat of controversy, that he is

11

exceeding the outermost limits of his proper role and hindering rather than facilitating the search for truth. This standard both recognizes the importance of protecting – and not preemptively discouraging – zealous advocacy while preventing an attorney's self-serving (and difficult to disprove) claim of good faith from absolutely immunizing the contemnor from contempt in egregious cases.

Id. at 220 (citation and punctuation omitted). In summary, the Court held that

an attorney may be held in contempt for statements made during courtroom proceedings only after the court has found (1) that the attorney's statements and attendant conduct either actually interfered with or posed an imminent threat of interfering with the administration of justice and (2) that the attorney knew or should have known that the statements and attendant conduct exceeded the outermost bounds of permissible advocacy. Because contempt is a crime, the evidence must, of course, support these findings beyond a reasonable doubt.

Id. The Court then offered a nonexhaustive list of factors that should be considered:

(1) the extent to which the attorney was put on notice prior to the contempt citation that a continuation of the offending statements would constitute contempt; (2) the likely impact of the offending statements on the deliberations of the factfinder, which calculus incorporates both the nature and timing of the offending conduct and whether the factfinder is a judge or jury; (3) whether the offending statements occurred as an isolated incident or constituted a pattern of behavior; (4) the significance of the particular issue in question to the case as a whole and the relative

gravity of the case; and (5) the extent, if any, to which the trial court provoked the offending statements with its own improper statements.

Id.

Lightfoot contends that neither her refusal to identify her sources nor her alleged misrepresentation are contemptible conduct when viewed in light of these factors. In applying the factors, we note that (1) Lightfoot was not put on notice before the contempt citation that her failure to disclose her good faith basis for her questions would constitute contempt; (2) the allegedly offending conduct occurred outside of the presence of the jury; (3) Lightfoot's assertion that she had other sources was made several times, but her assertion of privilege was made only on one occasion before she was held in contempt; (4) the particular issue in question, whether Lightfoot had a good faith basis for her questions, was not of great significance to the case as a whole – in fact, the trial court stated that "this is no longer about the defense" but was instead about Lightfoot and her statements as an officer of the court and a member of the Bar; and (5) the trial court did not provoke the offending conduct, although any delay in the trial was caused by the trial court's decision to take a 30-minute recess, which Lightfoot did not request.

"In considering whether to hold an attorney in contempt, the court should always assess whether there are other correctives sufficient to address the problematic conduct in question." *In re Jefferson*, 283 Ga. at 221. Other actions might have achieved the same result without holding Lightfoot in contempt. For example, the trial court could have warned Lightfoot that her failure to identify her sources would constitute contempt rather than simply announcing that Lightfoot was in contempt. Considering the standards enunciated in *Jefferson*, including the five factors listed above, we reverse the judgment of contempt against Lightfoot.

2. Because of our conclusion in Division 1, we do not reach Lightfoot's remaining arguments.

*Judgment reversed. Barnes, P. J., and Pipkin, J., concur.*